139 N.J. Super. 518 (1976)
354 A.2d 654
ALPHONSE ALFONE, ADMINISTRATOR OF THE ESTATE OF CONCETTA ALFONE, PLAINTIFF-APPELLANT,
v.
ANTHONY M. SARNO, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1975.
Reargued January 27, 1976.
Decided February 23, 1976.
*520 Before Judges LYNCH, LARNER and HORN.
Mr. John M. Blume argued the cause for appellant (Messrs. Blume, Kalb & Weiseman, attorneys; Mr. Jac B. Weiseman on the brief).
Mr. Thomas F. Campion argued the cause for respondent (Messrs. Shanley & Fisher, attorneys; Mr. Thomas J. Alworth of counsel).
The opinion of the court was delivered by HORN, J.A.D.
The single issue for decision here is whether this medical malpractice action is barred by the statute of limitations. N.J.S.A. 2A:14-2. More precisely, the question is whether under Lopez v. Swyer, 62 N.J. 267 (1973), a cause of action for medical malpractice accrues only when a patient "victim" of the malpractice knows or by the exercise of reasonable diligence and intelligence should know that the injury (or extended illness) was related to fault on the part of the physician as distinguished from mere knowledge of a causal relationship (without negligence) between the doctor's acts and the injury.
In a complaint filed September 8, 1968 Concetta Alfone (hereafter plaintiff)[1] alleged that defendant negligently performed *521 a surgical operation upon her thyroid on March 11, 1965. It is undisputed that in the course of that operation defendant removed a parathyroid gland, as a result of which Miss Alfone suffered serious medical consequences.[2] Since the suit was filed more than two years after the operation, defendant claimed it was barred by the statute of limitations.
The action was first tried before a judge and jury. On November 16, 1971 a verdict was returned in favor of plaintiff in the amount of $100,000. Defendant appealed. Following the decision of the Supreme Court in Lopez, this court reversed because the trial judge, in his charge to the jury, erroneously imposed upon defendant the burden of proving that the action was barred. As Lopez decided, the proper rule is that the burden of avoiding the statute of limitations rests upon the plaintiff. 62 N.J. at 276. Therefore, pursuant to Lopez, this matter was remanded for determination of the statute of limitations question by a judge sitting without a jury. 62 N.J. at 272, 274-275.
At the pretrial conference following remand the parties agreed that the issue of the statute of limitations would be determined on the record of the trial and depositions theretofore taken. Since the trial judge on remand (hereafter trial judge) did not have an opportunity to observe the witnesses, the ordinary scope of appellate review giving deference to the trial court's findings is not appropriate. See Pearl Assur. Co. v. Watts, 69 N.J. Super. 198, 205 (App. Div. 1961). We thus consider the entire record ourselves and reach our own determination of the facts.
The trial judge held that plaintiff's action was barred by the statute of limitations. In substance, he found that shortly after the operation of March 11, 1965 defendant informed plaintiff that as a result of the surgery her parathyroid glands were no longer functioning. The judge concluded that *522 at that point plaintiff knew she had experienced an unexpected, doctor-caused injury. This finding was largely based upon plaintiff's testimony in her deposition that defendant told her that during the operation a surgical instrument had touched the parathyroid glands, which were thus "traumatized" and became "dormant." Plaintiff also testified at trial that, "I became very much aware, you know, after the surgery that there was something desperately wrong."
The trial judge also found that while plaintiff was in the National Institutes of Health in Bethesda, Maryland, from March to June 1966, she came to believe that she had suffered a permanent injury. He concluded that by that time she should have known that she might have an actionable claim.
On appeal plaintiff contends that the trial judge misapplied the decision in Lopez. It is plaintiff's position that a proper interpretation of the rule there expressed is that the statute of limitations does not begin to run until the injured party is or should be aware that he has suffered an injury and that the injury was caused by the doctor's negligence. Plaintiff argues that the Supreme Court opinion in Lopez adopted the same view of this issue as the Appellate Division. The Appellate Division opinion stated:
* * * [W]e believe the true rule in any medical malpractice case to be that a cause of action does not accrue until plaintiff is or should be aware of his injury and its causal relationship to the negligent treatment unless  as mandated by the inclusion of reference in the Yerzy affirmance to the "facts of this case"  the circumstance of delay suggests injustice will thereby be done. [115 N.J. Super. 237 at 248]
Plaintiff asserts that she did not learn that her condition was caused by the negligence of defendant until August or September 1967, when she was told by a friend, Dr. Rueda, who had been an intern in the hospital at the time of her operation, that a parathyroid gland had been removed during the operation. Thus, she contends, her cause of action *523 did not accrue until that time. If it was that event which triggered the running of the statute of limitation, the filing of this complaint on September 8, 1968 was within the requisite two-year period.
Defendant argues that under Lopez the cause of action here accrued once Miss Alfone knew or should have known that there was a causal relationship between her injury and the doctor's act during surgery. It is defendant's position that an awareness on the patient's part that her doctor was negligent is not a prerequisite to the accrual of a cause of action. Defendant points out that the Supreme Court opinion in Lopez used language different from that used by the Appellate Division. The Supreme Court opinion stated that the cause of action "will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." 62 N.J. at 272; emphasis supplied.
The respective contentions of the parties on appeal bring the issue here into sharp focus: what awareness has the Supreme Court deemed necessary to trigger the accrual of a cause of action in a medical malpractice case?
We have concluded that the phrase in the Lopez rule, "basis for an actionable claim," contemplates a combination of injury and fault. Both of these are elements of an actionable claim.
In Yerzy v. Levine, 57 N.J. 234 (1970), the court affirmed the judgment of the Appellate Division (108 N.J. Super. 222) which had held (at 227) that the statute began to run on the day of plaintiff's operation or on the day that plaintiff first knew or should have known of her condition and defendant's alleged responsibility for it. The opinion of the Supreme Court said:
The judgment of the Appellate Division is affirmed for the reasons given by it, with the modification that under the facts in this case (1) the question with respect to the statute of limitations *524 is whether plaintiff brought this action within two years after plaintiff knew or had reason to know that plaintiff might have a basis for a claim against the defendant.
More recently the same interpretation of Lopez was made in Duffy v. Ackerhalt, 138 N.J. Super. 119 (App. Div. 1975), where it was said:
The discovery rule * * * defers accrual of a cause of action for malpractice until the date on which the plaintiff knew or should have known that her continued illness was attributable to the fault or neglect of the defendant.
Although in the instant case plaintiff knew that she was suffering and that something was "desperately wrong" we do not believe that she was cognizant of facts which would put her on notice that her condition might be attributable to the fault or neglect of defendant until Dr. Rueda told her so in 1967. Defendant had performed similar surgery on her in 1960, after which for a brief interval she had symptoms similar to those which succeeded the second operation in 1965. Before leaving the hospital defendant explained to her that during the operative procedure probably one of the instruments "touched" the parathyroid glands and "they fall asleep." He told her that the parathyroids were "thinner than hair" and "during surgery you don't see that because of the blood and everything."
The fact is that defendant knew that he had actually excised at least one of the parathyroids. His slanted explanation conveyed the impression that hers was not an abnormal reaction to a second operation on her thyroid. Essentially, his discussion at this time was intended to allay her anxiety and to implant hope that in time her symptoms would disappear. It is normal to expect that such explanation would subtlely induce her to concentrate on recovery rather than cause or fault.
The evidence does not support a finding that under the circumstances there should have existed in her mind a disbelief of her physician or a suspicion that he himself was at *525 fault. Quite the contrary  he was giving her assurance. He told her that the glands have been known to awaken several months or a year or two or three years later. Her medical history following the 1965 operation understandably shows a constant search for physical relief. This occupied her mind constantly.
The circumstances in the case at bar furnish even greater reason for the application of the rule than those in Lopez. In the latter case the results of the radiation therapy administered by defendant were "dramatically calamitous." The symptoms were strikingly severe and completely unexpected. The Lopez defendant was a stranger to Mrs. Lopez, not, as here, the family physician. He had been recommended by her personal physician. In the instant case the physician-patient relationship had preexisted the 1965 operation about 12 years and continued thereafter until she moved to New York City. She had even sought defendant's aid for admission to the National Institutes of Health in 1966, which institutes Dr. Rueda recommended to her. The facts show that Dr. Rueda told her the truth she maintained confidence in defendant.
Weighing the competing equities of the parties (Lopez, 62 N.J. at 274) we conclude that with due regard to the totality of the circumstances in this case plaintiff did not discover nor by the exercise of reasonable diligence and intelligence should have discovered that she may have had a basis for an actionable claim against defendant until August or September 1967.
Finally, we find no evidence that defendant suffered any prejudice by the delay since all records and witnesses were available at the trial.
In our opinion plaintiff has sustained the burden of proving that she is entitled to the indulgence of the equitable rule relieving her of the bar of the statute of limitations.
Accordingly the judgment appealed from is reversed and judgment is entered in favor of plaintiff as of this date without costs.
NOTES
[1] Concetta Alfone died during the pendency of this appeal. Her administrator has been substituted as plaintiff. The issues here are not related to her death.
[2] A fact finder could have found under the evidence that all of the parathyroids were removed or that one was removed and the remainder of them rendered impotent.