ALFONSE ALFONE, GENERAL ADMINISTRATOR AND ADMINIS-
TRATOR AD PROSEQUENDUM OF THE ESTATE OF CONCET-
TA ALFONE, DECEASED, PLAINTIFF-RESPONDENT, v. AN-
THONY SARNO, M. D., DEFENDANT-APPELLANT.

Argued January 21, 1980—Reargued November 17, 1980.
Decided July 20, 1981.

*Thomas F. Campion* argued the cause for appellant (*Shanley & Fisher*, attorneys; *Thomas F. Campion, Richard E. Brennan* and *Sharon T. Jacobson*, on the briefs).

*John M. Blume* argued the cause for respondent (*Blume & Weiseman*, attorneys).

*Henry G. Morgan* submitted a brief on behalf of *amici curiae* General Accident Group, The Home Insurance Company, Ohio Casualty Insurance Company, Maryland Casualty Insurance Company and Zurich Insurance Company (*Morgan, Melhuish, Monaghan & Spielvogel*, attorneys; *Kathleen F. Moran*, on the brief).

*William B. McGuire* submitted a brief on behalf of *amicus curiae* Medical Inter-Insurance Exchange (*Lum, Biunno & Tompkins*, attorneys; *Robert W. McAndrew* and *William J. Prout, Jr.*, on the briefs).

*Hugh P. Francis* submitted a brief on behalf of *amici curiae* American Insurance Association and Alliance of American Insurers (*Francis & Berry*, attorneys; *J. Raymond Berry*, of counsel).

The opinion of the Court was delivered by

PASHMAN, J.

This case required us to consider the scope of the statutory action for wrongful death, *N.J.S.A.* 2A:31–1 to –6. At issue is whether a judgment for damages in a personal injury suit brought by the decedent during her lifetime precludes a later action for wrongful death on behalf of her heirs or dependents. We hold that a death action may be brought if the recovery is tailored to avoid duplicating elements of damages which comprised or could have comprised the earlier judgment.

## I

### Facts

The underlying facts are not in dispute. Plaintiff is the general administrator and administrator *ad prosequendum* of the estate of his deceased daughter, Concetta Alfone. In his suit he alleges that his daughter's death in 1974 was the result of the negligence of defendant Anthony Sarno, M.D., in performing a subtotal thyroidectomy in 1965. This alleged malpractice was the subject of a prior action commenced by Concetta in 1968.[1] At a jury trial she obtained a general verdict in the amount of $100,000 that was upheld on appeal after her death. *See Alfone v. Sarno,* 139 *N.J.Super.* 518 (App.Div.), certif. den., 71 *N.J.* 498 (1976). Following our denial of certification, plaintiff executed a warrant in satisfaction of the judgment that was filed in October 1976. He had commenced the present wrongful death action about six months before.[2] In it he sought damages for funeral expenses and pecuniary injuries to decedent's mother, father and teenaged daughter. *See N.J.S.A.* 2A:31–1, –4, –5.

---

[1] Initially both decedent's personal injury suit and the present wrongful death action also asserted defendant's negligence in a similar operation in 1960. In both cases, however, the claims regarding this earlier surgery were abandoned before trial.

[2] This was within the two-year statutory period of limitations of *N.J.S.A.* 2A:31–3. Concetta Alfone died on March 18, 1974, and the wrongful death suit was commenced on March 11, 1976.

At the conclusion of the earlier trial for decedent's personal injuries, the court instructed the jury that any award of damages should consist of the following:

(1) "fair and reasonable compensation for any temporary or permanent injury resulting in disability to or impairment of [decedent's] faculties, her health, or her ability to participate in activities";

(2) "fair and reasonable compensation for her pain, suffering, discomfort and distress, past, present and future";

(3) "medical and hospital expenditures incurred in the past";

(4) "an allowance for reasonably anticipated medical services and medications."

The Appellate Division found that the damages presently sought would not duplicate any portion of the recovery in the personal injury action, see 168 *N.J.Super.* 315, 332 (App.Div. 1979), and defendant has not challenged that finding.

Defendant moved for summary judgment in the present action, contending that the judgment in the former personal injury action barred a wrongful death claim arising from the same allegations of negligence. The trial court agreed and granted judgment for defendant on May 30, 1978. The Appellate Division reversed. 168 *N.J.Super.* 315 (1979). In large measure the court based its decision on *dictum* in this Court's opinion in *Lawlor v. Cloverleaf Memorial Park, Inc.*, 56 *N.J.* 326, 343–45 (1970). There we had questioned prior cases characterizing a wrongful death action as wholly derivative from the decedent's claims for personal injuries. *Id.*; *see, e. g., Knabe v. Hudson Bus Transportation Co.*, 111 *N.J.L.* 333 (E. & A. 1933).

We granted defendant's petition for certification. 81 *N.J.* 332 (1979).

## II

### *Independent Aspects of the Wrongful Death Action*

Whether the present wrongful death suit may be maintained depends on the relationship between that statutory action and a claim for the decedent's personal injuries. We therefore initially direct our inquiry to New Jersey's Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6.

At early common law, the theory that death extinguished a personal right of action barred any claim for wrongful death. *See, e. g.,* 1 S. Speiser, *Recovery for Wrongful Death,* §§ 1:1 to 1:9 at 2–30 (2d ed. 1975). Early precedents in this State have held that no action lies for the death of another except as provided by statute. *See, e. g., Myers v. Holborn,* 58 *N.J.L.* 193 (E. & A. 1895).[3] The model for this State's original wrongful death statute, *L.* 1848, *p.* 151, was an 1846 act of the British Parliament entitled "An Act for compensating the Families of Persons killed by Accidents" and universally known as Lord Campbell's Act, 9 & 10 *Vict., c.* 93. As enacted in 1846, section one of Lord Campbell's Act provided in relevant part:

> [W]hensoever the Death of a Person shall be caused by wrongful Act, Neglect, or Default, and the Act, Neglect, or Default is such as would *(if Death had not ensued) have entitled the Party injured to maintain an Action and recover Damages in respect thereof,* then and in every such Case *the Person who would have been liable if Death had not ensued shall be liable* to an Action for Damages, notwithstanding the Death of the Person injured * * *. [emphasis added]

While our wrongful death statute has been amended at various times since its original passage in 1848, *see, e. g., L.* 1960, *c.* 194; *L.* 1948, *c.* 429, the current enactment, *N.J.S.A.* 2A:31–1 to –6, maintains many of the features of Lord Campbell's Act. This similarity becomes clear by a comparison of Lord Campbell's Act with the following pertinent language of *N.J.S.A.* 2A:31–1:

> When the death of a person is caused by a wrongful act, neglect or default, such as would, *if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable* in an action for damages, notwithstanding the death of the person injured * * *. [emphasis added]

Essentially the issue before us is one of statutory interpretation: whether the emphasized language above means that a death action is wholly derivative from whatever right of action the decedent possessed when he died. In other words, the

---

[3]*But see Portee v. Jaffee,* 84 *N.J.* 88 (1980) (mother could recover damages for her mental and emotional distress caused by watching the prolonged suffering and death of her seven-year-old son).

question is whether the statutory death action depends completely upon the decedent's right to sue for his own injuries at the time of his death. If such dependence exists, a judgment in a personal injury action by the decedent would extinguish both the decedent's right to bring a second suit and any subsequent statutory action for wrongful death.

### A

Although no New Jersey decision has addressed the precise issue of preclusion we consider today, prior to our decision in *Lawlor v. Cloverleaf Memorial Park, supra,* our courts accepted the notion that the death action is wholly derivative. In *Knabe v. Hudson Bus Transportation Co., supra,* the Court of Errors and Appeals followed this view in deciding that the decedent's failure to bring a timely personal injury action while alive barred a subsequent suit for his wrongful death. 111 *N.J.L.* at 335; *see also Biglioli v. Durotest Corp.,* 44 *N.J.Super.* 93, 105 (App.Div. 1957), aff'd on other grounds, 26 *N.J.* 33 (1958); *Redick v. Rohm & Hass Co.,* 97 *N.J.Super.* 58, 60–61 (Law Div. 1967); *Coulter v. New Jersey Pulverizing Co.,* 11 *N.J.Misc.* 5 (Sup.Ct. 1932). Similarly in *Libera v. Whittaker, Clark & Daniels, Inc.,* 20 *N.J.Super.* 292 (Law Div. 1952), the court held that a pre-death settlement and release of a personal injury claim would bar a subsequent action for wrongful death on the same negligent acts. *Id.* at 295; *see also McKeering v. Pennsylvania R.R. Co.,* 65 *N.J.L.* 57 (Sup.Ct. 1900). These cases prompted the Third Circuit to hold that New Jersey law barred a wrongful death action where the decedent had obtained a judgment for his injuries during his lifetime. *Roberts v. Union Carbide Corp.,* 415 *F.*2d 474 (3d Cir. 1969).[4] The holdings in these cases were in harmony with the majority of courts construing cognate wrong-

---

[4]Unlike in the present case, the record in *Roberts* revealed that damages in the wrongful death action would duplicate elements of the recovery in the prior suit for personal injuries. *See* 415 *F.*2d at 475. It is not clear how much influence the potential for duplication had on the holding of the court.

ful death statutes. *See* S. Speiser, *supra,* §§ 5:14, 5:20 at 613, 631; 2 F. Harper & F. James, *The Law of Torts,* § 24.6 at 1291–92 (1956) and *id.* at 133 (Supp. 1968); Annot., 39 *A.L.R.* 579 (1925). Nevertheless in *Lawlor v. Cloverleaf Memorial Park, supra,* this Court questioned the soundness of these holdings. 56 *N.J.* at 344–45.

In *Lawlor* we held that where a survival action arose after a suit had been commenced by the decedent while alive, an additional claim for wrongful death against existing third-party defendants would relate back to the time decedent commenced the original personal injury action. The Court therefore reversed the Appellate Division's ruling that the new claim was barred by the statute of limitations. 56 *N.J.* at 345. Because of this holding, it was unnecessary for the Court to decide whether a wrongful death claim would be barred where a personal injury or survival claim has been brought too late. Nevertheless, the Court reexamined the traditional notion that a death action is wholly derivative from a right to sue for personal injuries. It questioned the reliance of earlier decisions on the following language of the wrongful death statute:

> When the death of a person is caused by a wrongful act, neglect, or default, *such as would, if death had not ensued, have entitled the person injured to maintain an action for damages* * * *. [56 *N.J.* at 344 (quoting *N.J.S.A.* 2A:31–1) (emphasis in original)]

Finding support in a minority of jurisdictions, the *Lawlor* Court suggested that the sounder view might be that the statute refers to the wrongful nature of the fatal injury, not the lapse of time between the injury and the commencement of suit. *Id.* at 345.[5]

In more general terms, the interpretation expressed in *Lawlor* looks to the tortious character of the conduct resulting in death,

---

[5]The Appellate Division may have exceeded its authority by ruling in this case that it was not constrained to follow previous authority on the issue of the relationship of wrongful death actions to the decedent's right to sue. *Lawlor* did not overrule prior case law, nor did it decide the issue presented by this case. It left that decision to future determination. *See* 56 *N.J.* at 345.

and not to procedural or jurisdictional matters which would have barred the decedent from instituting suit at the time of his death. Discussing statutory language similar to that examined in *Lawlor*, Dean Prosser has stated:

It is not at all clear * * * that such provisions of the death acts ever were intended to prevent recovery where the deceased once had a cause of action, but it has terminated before his death. The more reasonable interpretation would seem to be that they are directed at the necessity of some original tort on the part of the defendant, under circumstances giving rise to liability in the first instance, rather than to subsequent changes in the situation affecting only the interest of the decedent. [W. Prosser, *The Law of Torts*, § 127 at 911 (4th ed. 1971)]

*See also* Fleming, *The Lost Years: A Problem in the Computation and Distribution of Damages*, 50 *Calif.L.Rev.* 598, 609 (1962); Schumacher, *Rights of Action Under Death and Survival Statutes*, 23 *Mich.L.Rev.* 114, 121 (1924). An assessment of the interests redressed by a wrongful death action confirms our conclusion that maintenance of the action does not require the availability of an action for damages by the decedent at the time of his death, but only a tortious and fatal injury.

### B

New Jersey's wrongful death statute created a new cause of action "beyond that which the deceased would have had if he had survived, and based on a different principle—a new right of action." *Cooper v. Shore Electric Co.*, 63 *N.J.L.* 558, 563 (E. & A. 1899); *see* 2 F. Harper & F. James, *supra*, § 24.2 at 1286. Upon the death of a tortiously injured person, the statute provides a right to recover the pecuniary damages incurred by the decedent's next of kin as a result of the death. *See N.J.S.A.* 2A:31–4, –5; Schumacher, *supra*, at 115–16. By requiring a "fair and equitable apportionment" of damages in accord with financial need, *see N.J.S.A.* 2A:31–4, the wrongful death statute addresses specific interests of dependents that receive only incidental protection in any surviving personal injury suit, *see N.J.S.A.* 2A:15–3. Unlike an action for wrongful death, the survival action inheres in the estate and is therefore subject to devise and the claims of creditors. *See, e. g., Soden v. Trenton*

*and Mercer Cty. Traction Corp.*, 101 *N.J.L.* 393, 398 (E. & A. 1925). The survival action merely "perpetuat[es] the right of action which the deceased himself would have had, to redress his own injuries, but for his death." 2 F. Harper & F. James, *supra*, § 24.2 at 1287.[6] The wrongful death action, in contrast, includes two essential elements not present in any action brought by the decedent for his personal injuries. They are, first, death caused by the tortious act of the defendant and, second, the particular damages flowing therefrom to the next of kin. The existence of a separate statute of limitations for wrongful death claims, *N.J.S.A.* 2A:31–3, is further indication of the differing personal interests underlying the action.

It is difficult to reconcile the distinct nature of the wrongful death action with the view that it is wholly dependent upon the decedent's right to bring a cause of action for his injuries at the time of his death. *See Goodman v. Mead Johnson & Co.*, 534 *F.*2d 566, 569–70 (3d Cir. 1976), *cert.* den., 429 *U.S.* 1038, 97 *S.Ct.* 732, 50 *L.Ed.*2d 748 (1977); Schumacher, *supra*, at 120–21; 1 S. Speiser, *supra*, § 5.14 at 617. If the wrongful death action creates separate rights in the beneficiaries, the decedent should not be permitted to foreclose the action completely. *See Rowe v. Richards*, 35 *S.D.* 201, 151 *N.W.* 1001, 1006 (1915). Based on the underlying interests protected by the wrongful death statute, we agree with the suggestion in *Lawlor* and the holding of other authorities that maintenance of the action is not barred by a judgment in a suit brought by the decedent while alive.

In construing the statute in this way, we are mindful of the general rule of statutory construction that the Legislature's acquiescence in a long-standing judicial interpretation is indica-

---

[6]The survival action, *N.J.S.A.* 2A:15–3, seeks to compensate the estate for the pain and suffering of the deceased and the loss of earnings by him prior to his death. It also allows recovery for funeral and burial expenses. Hospital, medical and funeral expenses may alternatively be sought in a death action. *N.J.S.A.* 2A:31–5.

tive of legislative intent. *Lemke v. Bailey,* 41 *N.J.* 295, 301 (1963); *Egan v. Erie R. Co.,* 29 *N.J.* 243, 250 (1959). Legislative silence, however, has been referred to as a "weak reed upon which to lean," 2A Sutherland, *Statutory Construction,* § 49.10 at 261 (4th ed. 1973). Application of this maxim of statutory construction would require at a minimum a clear and unequivocal judicial interpretation as the subject of legislative acquiescence. Neither an unequivocal judicial construction nor legislative acceptance appears with clarity here. Only the language of the wrongful death statute itself and its manifest purpose provide a basis for determining the intent of the Legislature. *Schmoll v. Creecy,* 54 *N.J.* 194, 203 (1969). Our examination of that language and purpose yields the conclusion that a wrongful death action is not contingent upon the continuing availability of an action for decedent's personal injuries.

It is also well-settled as a general rule to assist courts in statutory construction that statutes in derogation of the common law should be strictly construed. *E. g., Dacunzo v. Edgye,* 19 *N.J.* 443, 451 (1955); *Carlo v. Okonite-Callender Cable Co.,* 3 *N.J.* 253, 265 (1949); *see generally* 3 Sutherland, *supra,* § 61.01–.06. However, the operation of this rule is not inexorable.

[It] will not be permitted to defeat the Legislature's obvious purpose or lessen the scope plainly intended to be given a statute, and when the intent of the Legislature is clearly and plainly expressed it must be carried out. [*Dacunzo,* 19 *N.J.* at 451 (citations omitted)]

A contrasting rule of statutory construction provides that a remedial statute must be liberally construed to effectuate its purpose. The Wrongful Death Act is remedial in nature—its salutary purpose to eliminate the inequity of denying all right of recovery for the death of a family member. *See Turon v. J. & L. Construction Co.,* 8 *N.J.* 543, 558 (1952); *Soden v. Trenton and Mercer Cty. Traction Corp., supra,* 101 *N.J.L.* at 396–97. We have recently observed that "[t]he fundamental aim of our Wrongful Death Act, *N.J.S.A.* 2A:31–1 *et seq.,* is compensation for the pecuniary losses suffered by the survivors of those killed by wrongful act, neglect or default." *Tenore v. Nu Car Carri-*

*ers*, 67 *N.J.* 466, 473 (1975). Doubts as to the meaning of the statute must be resolved in favor of advancing this purpose. *See Service Armament Co. v. Hyland*, 70 *N.J.* 550, 558 (1976). This rule of statutory construction strengthens our view that although the decedent's right to sue for his personal injuries has been extinguished by a previous judgment or settlement, the wrongful death action may still be maintained by the administrator *ad prosequendum*.

We conclude that the right of action for wrongful death under *N.J.S.A.* 2A:31–1 to –6 depends upon the occurrence of a wrongful and ultimately fatal act or omission and is not limited to the availability of decedent's own cause of action had he survived. Plaintiff may therefore maintain the present suit.

### III

*Derivative Aspects of the Wrongful Death Action*

#### A

*Liability*

Our conclusion that the wrongful death action may be maintained despite a previous judgment in the decedent's personal injury action does not mean that it is independent for all purposes. Although different plaintiffs and different interests are involved in the two actions, the right to recover for wrongful death derives directly from the tortious act or omission of the defendant against the decedent. Defendant committed one wrong against the decedent which resulted in injuries first and death later. The wrongful death beneficiaries under *N.J.S.A.* 2A:31–4 recover for their own pecuniary losses resulting from the tortious conduct of the defendant, but the language of *N.J.S.A.* 2A:31–1 indicates clearly that the focus of the claim is on the wrong done to the decedent. Consequently, defendant should be required to litigate only once the substantive issues

concerning liability [7] arising out of the single act or omission. This conclusion follows naturally from general notions of fairness and from the principles underlying the rules of *res judicata*.

First, it would not be fair to one charged with liability for a wrongful act to defend successfully against the charge in a personal injury suit but subsequently to be forced to defend a second time, possibly years later, for death resulting from those same injuries. On the other hand, if the defendant had ample opportunity to defend against the charge but failed in the earlier action, the adverse judicial determinations might in fairness be binding on him in subsequent litigation. *Cf. Restatement (Second) of Judgments* § 88 and Comment b (Tent. Draft No. 2, 1975) (issue preclusion in subsequent litigation with others). Once the liability of the defendant has been determined on the merits in a judicial decision, all interested parties should be able to rely on that determination in ordering their affairs with respect to the incident causing the original injury.

Second, principles of *res judicata* are consistent with this rule requiring the wrongful death litigants to be bound by prior resolution of substantive issues concerning liability. Although the wrongful death beneficiaries may not have been parties to the prior personal injury action of the decedent, their interests, at least insofar as defendant's liability is concerned, were represented in that action by the decedent. The decedent had every incentive to litigate the liability issue fully and effectively. Thus, the wrongful death beneficiaries can be said to be "in privity" with the decedent or successors in interest to the extent that their interests overlap with those of the decedent. This adaptation of *res judicata* to non-parties [8] is based on an expansive, equitable definition of "privity."

---

[7] The question of damages will be addressed separately in the next section of this opinion.

[8] The concept of holding persons bound by a prior judgment to which they were not parties has occurred in other contexts. *See* Note, *Collateral Estop-*

Occasionally . . . justice and fair play demand that a nonparty to the first suit be bound by the adjudication on the claim.

. . . . . . . .

The basic principle in such multiple party claim-preclusion cases seems to be that certain individuals may be so closely related, their interests so interwoven, or their rights so similar that it is unfair to treat them separately. Thus one can win or lose and in so doing he is winning or losing for those "in privity" with him. [Vestal, *Claim Preclusion and Parties in Privity: Sea-Land Services v. Gaudet in Perspective*, 60 *Iowa L.Rev.* 973, 975 (1975)]

One important effect of applying *res judicata* principles to the wrongful death action is that issue preclusion will prevent relitigation of those essential issues concerning liability actually litigated and determined in the earlier personal injury action. *See Restatement (Second) of Judgments* § 68 (Tent. Draft No. 4, 1977).[9]

Issues determined by a judgment for or against a person in an action based on an act which later causes his death are conclusive in a subsequent action for causing his death. [*Id.* at § 92.1(3) (Tent. Draft No. 3, 1976)]

Among others, such issues determined in the personal injury action may include negligence or percentages of negligence under our comparative negligence statute, *N.J.S.A.* 2A:15–5.1 to –5.3, proximate cause of the injury, duty of the defendant to the decedent, immunity of the defendant from suit, and strict or vicarious liability. These matters may not be relitigated by either party in the wrongful death action if determined as part of the prior judgment.

A second effect of *res judicata* principles is that the wrongful death plaintiff may not alter the theory of liability and raise

---

pel of Nonparties, 87 *Harv.L.Rev.* 1485 (1974); *cf. Penn-Central Merger Cases*, 389 *U.S.* 486, 505–06, 88 *S.Ct.* 602, 611–12, 19 *L.Ed.2d* 723 (1968) (non-parties to prior suit held bound by the judgment because they might have joined in that suit).

[9]Section 68 of the Restatement Tentative Draft provides:

Issue Preclusion—General Rule

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

issues pertaining to liability in his action which were not raised in the prior personal injury action. Similarly, defendant may not interpose defenses available to him in the earlier action but not actually raised. To illustrate, if decedent, proceeding on a theory of strict liability, lost on the merits in his action, the wrongful death plaintiff may not relitigate on the basis of a negligence theory. Likewise, if defendant failed to raise a defense such as immunity in the earlier action, he may not do so in the later action.

This limitation on the scope of the wrongful death action is mandated by the firm judicial policy which seeks to impel litigants to consolidate their claims arising from a "single controversy" whenever possible. *See Aetna Insurance Co. v. Gilchrist Brothers, Inc.*, 85 *N.J.* 550 (1981); *Tevis v. Tevis*, 79 *N.J.* 422, 434 (1979). To allow without limitation the presentation of any theory of recovery, even though it might have been brought in an earlier action, would encourage the splitting of litigation and a multiplicity of lawsuits. This aspect of *res judicata*, sometimes called claim preclusion, bars the subsequent action whenever the decedent lost his own action on the merits. *See Restatement (Second) of Judgments* §§ 45(b), 48, 92.1(1) (Tent. Drafts No. 1, 1973, and No. 3, 1976). Conversely, if decedent won the previous action, the issue of defendant's liability for the original injury will be settled.

We anticipate that the issues to be litigated in the wrongful death action will often be limited to causation of death and damages. If the prior personal injury suit proceeded to judgment on the merits, it will usually have determined the underlying essential issues concerning defendant's liability to the decedent.

■ Where there is no prior judgment because the decedent has settled with or released the defendant prior to any litigation, these essential issues will not have been adjudicated. Therefore, the rules of *res judicata* will not apply to the issue of liability. Hence, whether these issues can be fully litigated in the wrong-

ful death action may depend upon the terms of such settlement or release. While this result may cause stale factual questions to be raised and may require rejuvenation of faded memories, in general the disadvantages will be visited equally on both defendant and plaintiff. Since the plaintiff carries the burden of proving liability, he will usually not benefit from the passage of time since the incident.

To summarize, a wrongful death action arising after decedent proceeded to judgment in his own personal injury action is derivative of the prior action for purposes of issue preclusion and the single controversy doctrine. Neither party may relitigate essential issues concerning liability already determined, or present theories or defenses not raised in the earlier action.

## B

### *Duplication of Damages*

The most troublesome consequence of allowing a wrongful death action to be maintained under these circumstances is the possibility of duplicating elements of damages already recovered by the decedent in the personal injury action.

If  *  *  *  deceased recovers before his death, his recovery for permanent injuries will be based, under the prevailing American rule, on his prospective earnings for the balance of his life expectancy at the time of his injury *undiminished by any shortening of that expectancy as a result of the injury.* *  *  *  The danger of double recovery becomes clear when it is recalled that any benefits of which the survivors were deprived, by the death, would have come out of these very prospective earnings if deceased had lived. [2 F. Harper & F. James, *supra,* § 24.6 at 1293–94 (footnotes omitted) (emphasis in original)]

It is not strictly accurate to say that *any* benefits lost by the survivors would have come out of the decedent's earnings, for the pecuniary value of other kinds of services is also recoverable in the wrongful death action. *See Green v. Bittner,* 85 *N.J.* 1 (1980). Nevertheless, the elements of damages in the wrongful death action will often duplicate what was already recovered in the earlier action.

Generally, it would be unfair to require a defendant to face double liability for the same elements of damages, even if the benefits accrue to different persons. A requirement that a tortfeasor pay twice for the same damages caused by a single wrong would be inconsistent with basic principles of tort law. It would, in effect, constitute a form of punitive or exemplary damages. Duffey, *The Maldistribution of Damages in Wrongful Death*, 19 *Ohio St.L.J.* 264, 274–75 (1958). But punitive damages are to be assessed only where the wrongdoer's conduct is especially egregious. *Leimgruber v. Claridge Associates, Ltd.*, 73 *N.J.* 450, 454 (1977). The Legislature did not intend a wrongful death action to be a form of punishment, *Graf v. Taggert*, 43 *N.J.* 303, 311 (1964); yet allowing duplication of liability would transform the statutory right into just that.

In attempting to preserve the beneficiaries' rights under a wrongful death statute, some courts have either ignored or brushed aside the double liability problem. *Blackwell v. American Film Co.*, 189 *Cal.* 689, 209 *P.* 999 (1922); *Kaiser Foundation Hospitals v. Superior Court*, 254 *Cal.App.2d* 327, 62 *Cal.Rptr.* 330 (1967); *DeHart v. Ohio Fuel Gas Co.*, 84 *Ohio App.* 62, 85 *N.E.2d* 586 (1948); *Kaczorowski v. Kalkosinski*, 321 *Pa.* 438, 184 *A.* 663 (1936); *Rowe v. Richards, supra.* Other courts have allowed this problem so to confound the statutory rights of wrongful death beneficiaries as to wipe them out completely. In order to avoid double liability, these courts have viewed the wrongful death claim as totally derivative of the decedent's right to sue and therefore barred whenever the decedent either settled or pursued to judgment his own personal injury claim. *Schlavick v. Manhattan Brewing Co.*, 103 *F.Supp.* 744 (N.D.Ill. 1952); *Hindmarsh v. Sulpho Saline Bath Co.*, 108 *Neb.* 168, 187 *N.W.* 806 (1922); *Fontheim v. Third Ave. Ry. Co.*, 257 *App.Div.* 147, 12 *N.Y.S.2d* 90 (1939); *Haws v. Leuthje*, 503 *P.2d* 871 (Okl. 1972).

In *Sea-Land Services v. Gaudet*, 414 *U.S.* 573, 94 *S.Ct.* 806, 39 *L.Ed.2d* 9 (1974), the United States Supreme Court attempted to resolve the double liability problem. A longshoreman had recovered damages for his personal injuries during his lifetime, and

subsequently died as a result of those injuries. Relying on *Moragne v. States Marine Lines*, 398 *U.S.* 375, 90 *S.Ct.* 1772, 26 *L.Ed.2d* 339 (1970),[10] his widow then brought a wrongful death action under maritime law. Notwithstanding the earlier recovery, the Supreme Court held that the widow could recover for loss of services, loss of society and funeral expenses, 414 *U.S.* at 591–92, 94 *S.Ct.* at 818. The Court believed that none of these elements of damages presented a problem of double liability. It maintained, however, that the widow could not recover for her loss of support to the extent that her damages would overlap the award for lost earnings in her husband's former action. "[T]he tortfeasor should not be required to make further compensation in a subsequent wrongful death suit for any portion of previously paid wages." *Id.* at 592, 94 *S.Ct.* at 818. The Court believed that "application of familiar principles of collateral estoppel" would eliminate the potential for double liability. *Id.* Writing for the Court, Justice Brennan reasoned that collateral estoppel was appropriate because in recovering for his injuries the decedent acted in a fiduciary capacity for those who later brought the wrongful death action. *Id.* at 592–94, 94 *S.Ct.* at 818–19.

We do not agree with the formal notion of trusteeship suggested by *Gaudet*. "[A]s trustee the plaintiff in the personal injury action would have to assert not only his own claim but that of his prospective beneficiaries, on penalty of precluding the latter if he did not." *Restatement (Second) of Judgments* § 92.1, Reporter's Note at 57 (Tent. Draft No. 3, 1976). The question of what duties the injured party as trustee would have towards the potential wrongful death beneficiaries demonstrates that this concept causes more problems than it resolves. *See Sea-Land Services v. Gaudet, supra*, 414 *U.S.* at 608 n.21, 94 *S.Ct.* at 826 n.21, 39 *L.Ed.2d* at 34 n.21 (Powell, J., dissenting).

---

[10]In *Moragne*, the Court held that an action for wrongful death based on unseaworthiness may be maintained under federal maritime law. 398 *U.S.* at 409, 90 *S.Ct.* at 1792.

We find none of the approaches taken in the cases described here satisfactory. On the one hand, the potential for unfairness to defendants mandates that our decision today not ignore the double liability problem. On the other hand, the complexity of the problem cannot dissuade us from attempting to fulfill the remedial purposes of the wrongful death statute. As we said earlier in Part II of this opinion, the wrongful death statute was intended to create a separate cause of action in favor of the next of kin and accordingly was designed to provide specific elements of damages tailored to fit their needs. *Supra* at 108. The troublesome problem of devising a method to avoid potential duplicate damages should not cause this Court to shy away from preserving the rights created by the statute. We believe that rules and procedures can be fashioned to allow preservation of those statutory rights with simultaneous assurances against unfairness to defendants. *See Tenore v. Nu Car Carriers, supra,* 67 *N.J.* at 493 (in a wrongful death action, declining "to give simplicity paramount significance in fashioning the law of damages").

■ The general rule for maintenance of the wrongful death action must be that no elements of damages may be sought or recovered that were or could have been claimed in the earlier personal injury action. The American Law Institute in its tentative drafts of the *Restatement (Second) of Judgments* has taken an identical position.

> If a wrongful death action is permitted even though the decedent had obtained a judgment for his personal injuries, the judgment precludes recovery of damages in the wrongful death action for such elements of loss *as could have been recovered* by the decedent in his action. [§ 92.1(2)(b) (Tent. Draft No. 3, 1976) (emphasis added)]

It is necessary to preclude, as a general rule, not only the elements of damages that were actually recovered but also those that could have been sought. First, the policy against repeatedly exposing defendant to the risk of liability for the same elements of damages requires such a rule. Second, under a more lenient rule, the courts would always be faced with the

task of discerning exactly what damages the decedent recovered in the earlier action. While it may still be necessary in some cases for the court in the wrongful death action to examine the complete record of the personal injury action, as we shall explain presently, it would be too wasteful of judicial resources and often unfair to a defendant to require such a procedure in every case.

Of course, there are elements of damages recoverable in the wrongful death action that present no danger of double liability. The obvious example is funeral expenses. *See N.J.S.A.* 2A:31–5. Another non-duplicative element of damages may be lost advice and guidance, such as that of a parent to a child. *Cf. Green v. Bittner, supra* (advice and guidance of a child to a parent recoverable in wrongful death action). We need not decide today precisely which other elements present no danger of double liability; that decision can await future cases with a factual record and legal arguments focused more closely on that issue. Instead, we leave the trial courts for now with a general directive that the wrongful death action may be maintained for those elements of damages not recoverable in the earlier action.

■ However, strict application of this rule would inject a different kind of unfairness in many cases where the decedent could not have sought certain elements of damages in his own action simply because those damages were not discoverable at that time. Considerations of fairness toward the survivors, who have suffered a loss at the hands of a wrongdoer, and the desire to fulfill the beneficent purposes of the wrongful death statute impel us to temper the severity of our general rule with an exception. Like the judicially formulated "discovery rule" in the context of statutes of limitations,[11] *Lynch v. Rubacky,* 85

---

[11]The "discovery rule"

provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim. [*Lopez v. Swyer,* 62 *N.J.* 267, 272 (1973)]

*N.J.* 65 (1981); *Burd v. New Jersey Telephone Co.*, 76 *N.J.* 284 (1978); *Lopez v. Swyer*, 62 *N.J.* 267 (1973); *Alfone v. Sarno*, 139 *N.J.Super.* 518 (App.Div.), certif. den., 71 *N.J.* 498 (1976), this exception has an equitable basis and seeks to reconcile the policy behind the rules of *res judicata* with the practical difficulties of obtaining adequate redress for undiscoverable injuries caused by the tortious conduct of another. Where the extent of injuries causing death was not reasonably discoverable at the time of the decedent's suit, the wrongful death plaintiff may pursue elements of damages that technically could have been but in fact were not recovered in the earlier action.

To determine whether a particular wrongful death claim fits within this exception, the trial court must conduct a pre-trial hearing similar to the "discovery rule" hearing described in *Lopez v. Swyer, supra.* The first purpose of the hearing will be to determine whether the true extent of the injuries could have been discovered before the earlier action if the decedent had exercised reasonable diligence and intelligence in investigating the original injuries. The objective of this threshold inquiry is to remove for further consideration those cases in which the injuries causing death were so unexpected that the decedent could not reasonably have claimed sufficient damages himself. "Discovery rule" concepts will be relevant in this inquiry. *See, e. g., Lynch v. Rubacky, supra.* The burden of proof will be on the plaintiff to show by a preponderance of the evidence at the hearing that the true extent of the injuries was not reasonably discoverable earlier. If plaintiff satisfies this requirement, the next purpose of the hearing will be to determine what elements of damages plaintiff may pursue in the wrongful death action. In addition to those elements that present no danger of double liability, such as funeral expenses, the plaintiff may seek those elements of damages which were clearly not awarded in the earlier action *and* which were not reasonably discoverable by the

decedent.[12]   Again, the burden of proof will be on the plaintiff to demonstrate such damages by a preponderance of the evidence.

In many wrongful actions, the major element of recovery for the survivors is the lost benefits that would have come out of the decedent's prospective earnings. It is this element that poses the greatest risk of duplication of recovery. *See supra* at 114. Consequently, our rule limiting the wrongful death recovery to damages that were clearly not awarded in the personal injury action will usually require that this portion of the survivors' recovery be restricted to the lowest amount that the proofs in the earlier action show decedent would have earned between the date of his actual death and the end of his life expectancy. That amount is subtracted by the personal injury jury in arriving at its damages award. Therefore, assuming due diligence by the decedent in investigating his injuries, the availability of that amount to the survivors poses no risk of double liability. It was "clearly not awarded" and "not reasonably discoverable" in the personal injury action.

An examination of the record in the personal injury action will enable the trial court in the wrongful death action to ascertain with a high degree of probability the lowest amount that could have constituted these post-injury (and post-death) earnings. The trial judge should determine the lowest amount admitted into evidence by either party in the personal injury action as decedent's likely post-injury earnings. Absent unusual circumstances or the failure of the decedent to have investigated his injuries diligently, the portion of that figure which represents decedent's post-injury earnings cut off by his premature death should be the amount the wrongful death plaintiffs may

---

[12]Thus, even if the true extent of the injuries was not reasonably discoverable at the time of decedent's personal injury action, the wrongful death plaintiff will, for example, be unable to recover for loss of support if the decedent could have discovered that permanent disability would result from the injuries, but failed to seek those damages.

seek as the major source of their pecuniary losses allowed by the wrongful death statute.

In many cases payment by the defendant of even this limited amount will be unfair in the sense that the defendant may already have paid excessive future pain and suffering and medical expenses. We believe that fairness to the survivors requires us to disregard this inequity. It does not constitute double liability but is merely an unavoidable consequence of our tort system's policy of repose, which prevents us from correcting a verdict based upon events that occur thereafter.

The trial judge need not attempt to decipher what specific elements of compensation comprised the earlier jury award. Since the award usually takes the form of a single figure in dollars, such a task would often be no more than speculation and conjecture. Instead, the focus of the trial court's inquiry at the hearing will be what the decedent, assuming the exercise of due diligence, could reasonably have claimed in the earlier personal injury action.

The easier cases will be those where the discoverable injuries at the time of the earlier action were either very mild or very serious. If the decedent could have reasonably sought only minor damages previously because the injury seemed slight, the wrongful death plaintiff should be able to claim further damages normally. available in a wrongful death action. If the decedent's original injuries were known to be extremely serious, however, the wrongful death plaintiff should be barred from claiming damages that the decedent could have sought himself. The difficult cases will be those in the middle, where it is not obvious what damages the decedent could have reasonably sought because the original injuries were neither slight nor extreme.

To conduct the hearing, plaintiff ordinarily must make available to the judge a transcript of the personal injury trial, including jury instructions and counsel's arguments. Within his discretion, the judge may decide whether the transcript, other

documentary evidence or affidavits or certifications are sufficiently informative to make the determinations required. If not, he may require that further proofs, including the testimony of witnesses, be presented at the hearing. These proofs should show what damages the decedent could not reasonably have claimed in the earlier action because the injuries causing such damages were not discoverable. In making his decision, the primary concern of the judge must be fairness to both parties—avoiding the potential for double liability by the defendant and providing a means of redress to the plaintiff where it was not practically available through the earlier action.

The same procedures must be followed where the personal injury claim did not proceed to judgment but was settled or released. Because a trial transcript will not be available, the trial judge must examine the settlement agreement or release itself. We anticipate that settlement agreements in the future will clearly indicate what elements of damages the injured person is recovering and from what elements defendant has been released. A valid written settlement agreement specifically reciting what losses were compensated will be binding on the wrongful death parties on the issue of what damages can be claimed subsequently.[13] General recitals in a settlement agreement will be given such weight as the circumstances suggest they should be given; they will not be conclusive and will be binding on the parties only to the extent they reflect losses actually compensated pursuant to the agreement and discoverable claims actually relinquished in consideration of the settlement.[14].

---

[13]For example, if the terms of a settlement recite that plaintiff has received from defendant $10,000, which figure represents a compromise, for 20% loss of earnings over the next five years, the wrongful death survivors are precluded from recovering those damages.

[14]An example of a general recital would be one stating that plaintiff releases defendant from all claims arising from this injury in consideration of $10,000.

We recognize that our decision today may prevent insurance carriers from obtaining complete releases from all possible wrongful death claims, except perhaps by the inclusion in any such agreement of all persons who subsequently are determined to be wrongful death beneficiaries under *N.J.S.A.* 2A:31–4. The police favoring settlement and finality of claims, *see, e. g., DeCaro v. DeCaro*, 13 *N.J.* 36, 44 (1953); *Honeywell v. Bubb*, 130 *N.J.Super.* 130, 136 (App.Div. 1974), cannot defeat statutory rights created for the protection of survivors of one wrongfully killed. In any event, insurance carriers will be able to obtain releases from a substantial part of their potential liability. Thus we see no insurmountable conflict between the policy favoring settlement and our decision today.

As a final note it might be prudent to add that we are well aware that the rules and procedures we have established today are not the final answer to the difficulties presented by these issues. It is our belief that these rules and procedures will be improved and refined in subsequent cases as our courts gain experience. In the same way, insurance carriers and lawyers will develop methods through experimentation for protecting the several interests at stake here. Our task has been to lay the foundation for such future development and refinement.

## IV

### *The Present Case*

The record developed below does not provide sufficient information for us to apply the rules we have established to the circumstances of this case. The only clear conclusion we can draw is the one generally applicable to all such wrongful death actions following earlier recovery by the decedent—that the action is maintainable and that the plaintiff may recover at least funeral expenses. Whether there are other elements of damages not recoverable in the earlier action must await initial determination by the trial court.

In her own personal injury action, the decedent Concetta Alfone apparently did not pursue or recover future lost earnings. This element of damages is the one laden with the greatest potential for imposing double liability on the defendant. *See supra* at 114. Yet it may be that the decedent could have recovered such damages in her own action and consequently that her survivors should now be barred from belatedly claiming similar damages. In addition, no record has been developed below as to whether the true extent of the injuries causing death was discoverable before the earlier action through the exercise of reasonable diligence and intelligence. These matters must be resolved at the trial level by means of the hearing procedure we have described. Accordingly, it is necessary to remand this case to the trial court for a determination of what elements of damages plaintiff may seek in this wrongful death action.

The judgment of the Appellate Division is modified in accordance with this opinion and, as modified, affirmed.

CLIFFORD, J., dissenting.

It is well to recall occasionally that "the figure of justice is conventionally portrayed as carrying a pair of scales, not a cornucopia." Fleming, *The Lost Years: A problem in the Computation and Distribution of Damages,* 50 *Calif.L.Rev.* 598, 603 (1972) (quoting *Innes v. Visser,* [1936] *So.Afr.L.R.* 44, 45 (W.L.D.)).

The question presented by this case is whether a decedent's recovery during her lifetime for injuries that led to her death will bar an action for wrongful death under the Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6. I would answer this question in the affirmative, following over eighty years of precedent dictating that the wrongful death action is derived from the personal injuries action during life. This conclusion is supported by the

language of the statute, as well as by established precedent and purposeful public policy.

# I

The pertinent section of the Wrongful Death Act reads as follows:

> When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime. [*N.J.S.A.* 2A:31–1.]

A literal reading of the statute yields the built-in prerequisite of being able to maintain a suit at the time of death. Once the decedent has recovered for her injuries, she could not have maintained another suit at the time of her death, and a wrongful death action is therefore precluded. Although fundamentally aimed at compensating survivors of the decedent, see *Tenore v. Nu Car Carriers, Inc.*, 67 *N.J.* 466 (1975), the statute is decedent-centered. It is applicable only when (1) a wrong has been inflicted upon a decedent, (2) the decedent was injured and (3) the decedent could have brought an action to redress the wrong.

Two well-established principles of statutory construction are useful in analyzing the Wrongful Death Act. First, the statute is in derogation of the common law, *Cooper v. Shore Electric Co.*, 63 *N.J.L.* 558, 564 (E. & A.1899), and as such must be strictly construed. *Dacunzo v. Edgye*, 19 *N.J.* 443, 451 (1955). This principle of statutory construction was recognized by this court when dealing with the same statute in *Turon v. J & L Construction Co.*, 8 *N.J.* 543 (1952). In *Turon, supra,* the Court noted that because the statute was remedial in nature, it should be "liberally construed and applied to effectuate its beneficent object." *Id.* at 558. But, the court continued, inasmuch as the statute is in derogation of the common law, the class for whom

the remedy is provided may not be expanded beyond its terms. *Id.*[1]

The second principle of statutory construction helpful here is that construction of a statute by the courts, supported by long acquiescence on the part of the legislature or continued use of the same language or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent. *Lemke v. Bailey*, 41 *N.J.* 295, 301 (1963). The general rule, followed in New Jersey, is that the Wrongful Death Act gives an action only if the decedent had one. *Knabe v. Hudson Bus Transportation Co.*, 111 *N.J.L.* 333, 335 (E. & A.1933); *Coulter v. New Jersey Pulverizing Co.*, 11 *N.J.Misc.* 5, 6–7, 163 *A.* 661, 661 (Sup.Ct.1932). Therefore, under this second maxim of statutory construction, the derivative characterization imposed by the judiciary onto the Wrongful Death Act must be deemed to be in accordance with legislative intent.

## II

A review of the history of the Wrongful Death Act yields the same statutory interpretation. *See generally* Malone, *The Genesis of Wrongful Death*, 17 *Stan.L.Rev.* 1043 (1965). There could be no action under the common law for wrongful death. *Baker v. Bolton*, 170 *Eng.Rep.* 1033 (1808). The common law rule was *actio personalis moritur cum persona*, a personal right of action dies with the person. Related to this maxim is the felony-merger rule: if a person were to die as the result of a felony, a civil action would not lie because the defendant had committed an offense against the crown and the authority of the Sovereign preempted the case. *Smith v. Sykes*, 89 *Eng.Rep.* 160 (1677).

---

[1]The majority's assertion that this principle of statutory construction is inapplicable here because the Legislature has clearly and plainly expressed its intent in the statutory enactment, *ante* at 109, is nothing other than plain old-fashioned hyperbole. The very reason that this case is before us is that there is some doubt as to the meaning of the statute, a doubt reflected in the judicial opinions and voluminous literature on the subject elsewhere.

Punishment for the commission of a felony at common law was death and the forfeiture of all property to the crown. Thus, after a crime had been punished nothing remained of the felon or his property on which to base an action.

In response to this seemingly harsh common law rule, Parliament in 1846 enacted Lord Campbell's Act, 9 & 10 *Vict. c.* 93, which permitted a right of action for wrongful death on behalf of a spouse, parent or child of the decedent. *Ante* at 104. The New Jersey Wrongful Death Act was modeled after Lord Campbell's Act and the two statutes are virtually identical.[2]

Wrongful death statutes have been adopted in every state except Connecticut. S.M. Speiser, *Recovery for Wrongful Death*, Appendix A (2d ed. 1975).[3] The majority rule interpreting such statutes is that a prior recovery by a decedent in a personal injury action will bar recovery in a wrongful death action predicated on the same injuries. 22 *Am.Jur.*2d *Death*

---

[2] It is not clear why the New Jersey legislature omitted the portion of Lord Campbell's Act providing that "not more than one action shall lie for and in respect of the same subject matter of the complaint." However, it is worth noting that Maryland is the *only* state in the United States that has included the above-quoted provision in its Wrongful Death Statute. *Md.Code Ann.* art. 67 § 4(a).

[3] Twenty-one states have statutes virtually identical to New Jersey's and to Lord Campbell's Act. See Speiser, *supra*, at Appendix A. Twenty-seven other states have similar statutes. *Id.* Colorado, Idaho, Illinois, Kansas, Massachusetts, New Hampshire and North Carolina have placed dollar limits on the amount of money which may be recovered in a wrongful death action. *Id.* Louisiana provides that the decedent's recovery for the injuries before death will not bar a subsequent action for wrongful death. *La.Civ.Code Ann.* art. 2315. Eight jurisdictions specifically provide that no recovery will be allowed under the wrongful death statute if the decedent recovered for his or her injuries prior to death. See *Del.Code* tit. 6, § 3704(b); *D.C.Code* § 16–2701; *Md.Ann.Code* art. 67 § 4(a); *Or.Rev.Stat.* § 30.020(3) (wrongful death recovery reduced by amount decedent recovered in prior suit); 12 *Pa.Cons.Stat.Ann.* § 1601; *S.C.Code* § 10–1956; *Va.Code* § 8–635; *W.Va. Code* § 5474. In addition, most statutes specify the type of damages recoverable. Therefore, given the different varieties of statutory limitations on the wrongful death recovery, cases from other jurisdictions may not be transplanted casually.

§§ 90, 91 (1965); *Annot, 39 A.L.R.* 579 (1925); F. Harper & F. James, *The Law of Torts* § 24.6 (1956); W. Prosser, *Law of Torts* § 127 at 910–14 (4th ed. 1971); *Restatement (Second) Judgments* § 92.1 (Tent.Draft No. 3, April 15, 1976); S. M. Speiser, *supra,* at § 5.20. The *Reporter's Note* to the *Restatement (Second) Judgments* § 92.1, *supra,* concludes that the "clear weight of authority is that a prior judgment for or against the decedent precludes a wrongful death action by his beneficiaries."

The law in New Jersey has always been that the wrongful death action is derivative. Where the decedent was barred from bringing an action for damages at the time of his death, his executor and heirs would be barred from bringing a wrongful death action. See *Libera v. Whittaker, Clark & Daniels, Inc.,* 20 *N.J.Super.* 292, 294–95 (Law Div. 1952) (general release executed by decedent bars subsequent wrongful death suit). It is true that the wrongful death action is separate and distinct from a personal injury action, see *Soden v. Trenton & Mercer Cty. Traction Corp.,* 101 *N.J.L.* 393, 398 (E. & A.1925); but despite the difference between the two actions, the wrongful death act "gives an action only if the decedent had one." *Coulter v. New Jersey Pulverizing Co., supra,* 11 *N.J.Misc.* at 6–7; *Knabe v. Hudson Bus Transp. Co., supra,* 111 *N.J.L.* at 335 (no right of action under Wrongful Death Act where decedent was barred by statute of limitations); *Tharp v. Shannon,* 95 *N.J.Super.* 298, 304 (Law Div.1967) (survival statute and wrongful death act are derivative in nature and suits thereunder are dependent upon decedent's right to recover had she lived). *Contra, Silverman v. Lathrop,* 168 *N.J.Super.* 333 (App.Div.1979) (decided by same Appellate Division panel as decided this case).[4]

---

[4]The derivative characterization of New Jersey's Wrongful Death Act has been recognized and followed by the federal courts. *Goodman v. Mead Johnson & Co.,* 534 *F.*2d 566, 570 & n. 7 (3rd Cir.) *cert.* den., 429 *U.S.* 1038, 97 *S.Ct.* 732, 50 *L.Ed.*2d 748 (1976); *Roberts v. Union Carbide Corp.,* 415 *F.*2d

New Jersey case law pointing to a contrary interpretation is not dispositive here. Heretofore this Court had neither followed nor even endorsed those out-of-state cases that have reached a contrary result. See *Lawlor v. Cloverleaf Memorial Park, Inc.*, 56 *N.J.* 326, 344–45 (1970). Similarly, in *Brown v. General Aniline & Film Corp.*, 127 *N.J.Super.* 93 (App.Div.), aff'd o. b., 65 *N.J.* 555 (1974), a decedent compromised his personal injury claim in clear violation of the Worker's Compensation Law, *N.J.S.A.* 34:15–22. The court held that this settlement did not bar a dependency petition by the decedent's wife and children, noting that the "dependency claims must rise or fall on their own merits, and nothing that the decedent does, or attempts to do during his lifetime, can deprive dependents of their statutory benefits." *Brown, supra*, 127 *N.J.Super.* at 96. The fact that the *Brown* controversy arose under the Workers' Compensation statute distinguishes it and *Brown* can hardly be deemed controlling here.

The United States Supreme Court's recent venture onto the sea of wrongful death is similarly distinguishable. In *Moragne v. States Marine Lines, Inc.*, 398 *U.S.* 375, 90 *S.Ct.* 1772, 26 *L.Ed.*2d 339 (1970), the Court created a cause of action for wrongful death under general maritime law, overruling *The Steamer Harrisburg v. Rickards*, 119 *U.S.* 199, 7 *S.Ct.* 140, 30 *L.Ed.* 358 (1886) (no action for wrongful death under general maritime law). The Court expounded on *Moragne* in *Sea-Land Services Inc. v. Gaudet*, 414 *U.S.* 573, 94 *S.Ct.* 806, 39 *L.Ed.*2d 9 (1974), allowing the widow of a longshoreman to bring a wrongful death action under general maritime law where the longshoreman had recovered in a personal injury suit before his death. In both *Moragne* and *Gaudet* the injuries were sustained in territorial waters where the Death on the High Seas Act, the sailor's counterpart to New Jersey's Wrongful Death Act, did not apply. Further, the Maritime Wrongful Death remedy

474 (3rd Cir. 1969); *Holzsager v. Warburton*, 452 *F.Supp.* 1267, 1271 (D.N.J. 1978).

would be an admiralty action ordinarily tried to the court and not to a jury. 414 *U.S.* at 589 n. 24, 94 *S.Ct.* at 817 n.24, 39 *L.Ed.*2d at 23 & n. 24.

The Court's expansive view of wrongful death recovery in *Gaudet* was narrowed severely four years later. In *Mobil Oil Corp. v. Higginbotham*, 436 *U.S.* 618, 98 *S.Ct.* 2010, 56 *L.Ed.*2d 581, reh. den., 439 *U.S.* 884, 99 *S.Ct.* 232, 58 *L.Ed.*2d 200 (1978), the Court emphasized that application of *Gaudet* was limited to coastal waters where the Death on the High Seas Act was inapplicable. But see *American Export Lines Inc. v. Alvez*, 446 *U.S.* 274, 100 *S.Ct.* 1673, 64 *L.Ed.*2d 284 (1980) (general maritime law applies in both territorial waters and on high seas).

## III

There are strong and persuasive public policy reasons militating against permitting recovery both before death in a personal injuries action and after death in a wrongful death action. Potential problems—beyond satisfactory judicial resolution—involve lack of repose, double recovery, discouragement of settlement, the interests of unborn heirs and *res judicata.*

The insurmountable threat to policies of repose was addressed in *Coulter v. New Jersey Pulverizing Co., supra,* which held that inasmuch as the decedent was barred by the statute of limitations, his next-of-kin could not bring a wrongful death action. 11 *N.J.Misc.* at 6–7.

> If this were not so, if decedent lingered for twenty years and made no move, his representative could then assert a right of action to recover for an injury forgotten by everyone but the injured, who had slept on his rights for twenty years. Such could not have been the legislative intention.
>
> "The statute cannot be construed to give the widow a greater right than the husband would have if living. The plaintiff's husband extinguished his right of action by failing to assert it within the two-year period fixed by the statute. A right of action can be extinguished as effectively by the statute of limitations as in any other way." *Howard v. Bell Telephone Co.,* 306 *Pa.* 518, 160 *A.* 613, 615. See, also, *Kelliher v. New York Central and Hudson River Railroad Co.,* 212 *N.Y.* 207, 105 *N.E.* 824, and the very recent case of *Flynn v. New York, New Haven and Hartford Railroad Co.,* 283 *U.S.* 53 [51 *S.Ct.* 357, 75 *L.Ed.* 837] [11 *N.J.Misc.* at 7, 163 *A.* 661.]

Double recovery of damages presents a staggering problem in New Jersey, where it is well-settled that damages may be recovered for a tortious injury's "prospective consequences," including future medical care and treatment as well as anticipated pain and suffering. *Coll v. Sherry*, 29 *N.J.* 166, 174 (1959). A further recovery problem arises where the spouse of the injured party joins as a party to the personal injuries action and then brings a wrongful death action. Those jurisdictions allowing recovery in a personal injury action and an action for wrongful death have placed statutory limitations on exactly what may be recovered in each action. See Prosser, *supra,* at 912. To some extent this will avoid a double recovery problem. However, rewriting the Wrongful Death Act is for the legislature, not the courts. The double recovery problem is compounded when viewed in the context of the familial relationship envisioned in the Wrongful Death Act. For example, could a seriously injured person be enjoined from wasting his assets or disinheriting members of his family? See *Sea-Land Services v. Gaudet, supra,* 414 *U.S.* at 608 *n.* 21, 94 *S.Ct.* at 826 n.21, 39 *L.Ed.*2d at 31 *n.* 21 (Powell, J., dissenting).

These problems are simply too complex to be resolved by placing bandaids over the gaps in the law. In its solicitude the majority has created a new, super cause of action—one that cannot be extinguished by a settlement with the injured party during his lifetime, cannot be extinguished by satisfying a judgment awarded to the injured party during his lifetime, and cannot be defeated by the failure of the injured party to have brought suit within the statutory period during his lifetime. According to the majority, such a cause of action is an almost invincible right that springs into existence at that decisive moment when death comes to an injured party.

Because I would leave to the legislature the business of amending the Wrongful Death Act to provide for this novel cause of action, I would reverse.

*For modification and affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK—6.

*For reversal*—Justice CLIFFORD—1.