Juan Anthony **CRUZ**, Plaintiff,

v.

**CITY OF CAMDEN, City of Camden Police Department; County of Camden; William Simon, Sheriff of Camden County; John Doe 2, Warden of Camden County Jail (f/n); John Does 5 Through 10, Camden County Jail Corrections Officers (f/n); John Does 11 Through 15, Camden City Police Officers (f/n), Defendants.**

**Civ. No. 93–3567.**

United States District Court,
D. New Jersey.

Aug. 4, 1995.

Lorraine Anna Dicintio, Ballen and Gertel, Camden, NJ, for Plaintiff, Juan Anthony Cruz.

Juan J. Gonzalez, Emil J. Nell, IV, Office of City Attorney, Camden, NJ, for City of Camden and City of Camden Police Dept.

Howard S. Wilson, Office of the Camden County Sheriff, Camden, NJ, for Defendants, County of Camden; William Simon, Sheriff of Camden County; and Warden of Camden County Jail.

ROSEN, United States Magistrate Judge.

Presently before the court is the motion of Lorraine A. DiCintio, Esquire, attorney for the plaintiff, Juan Anthony Cruz, for leave pursuant to Fed.R.Civ.P. 15 to amend the complaint to add new causes of action against "John Doe" defendants and against newly named defendants. After careful consideration of the party's submissions, and after further consideration of the oral argument conducted on the record on June 30, 1995, and for the reasons noted below, the plaintiff's motion shall be *granted in part* and *denied in part.*

### FACTS AND PROCEDURAL HISTORY

This is a civil rights action filed by the plaintiff, Juan Anthony Cruz, against the City of Camden, County of Camden, Camden County Sheriff's Department, City of Camden Police Department, and numerous John Does. It is alleged that the plaintiff's civil rights were violated when the defendants subjected him to wrongful arrest and incarceration.

On or about March 8, 1992, a Port Authority Transit Corporation (hereinafter "PAT-

CO") police officer stopped the plaintiff for sitting on a turnstile at the Collingswood, New Jersey station of the PATCO High Speed Line. The PATCO officer requested the plaintiff's identification, wrote down the plaintiff's name and warned him not to sit on the turnstiles again. However, the officer did not detain the plaintiff at this time.

As the plaintiff was about to board a train, he was stopped again by a PATCO police officer who claimed that the plaintiff was George Lopez and that there was an outstanding warrant from the City of Camden for his arrest. Despite plaintiff's protests that the warrant was actually for his younger brother, George Lopez, he was arrested by the PATCO officers and taken to the Camden County Correctional Facility (hereinafter "Facility").

Upon arriving at the Facility, the arresting PATCO officer notified a corrections officer of the plaintiff's misidentification claim. Despite his protestations, the plaintiff was processed at the Facility. While detained, he claims that the correction officers subjected him to an unlawful strip and body cavity search. He contends that each day during his incarceration he wrote to the Warden and routinely spoke to corrections officers advising them that there was a misidentification.[1]

While incarcerated, the plaintiff allegedly slipped and fell on a shower floor and injured his finger. The plaintiff asserts that he reported the injury to a corrections officer and followed up this complaint with a note to the Warden. He claims that he received no medical treatment for his injury during his incarceration.

Plaintiff also contends that while incarcerated, he witnessed violent attacks by other prisoners. He alleges that the corrections officers delayed trying to stop the acts of violence and, as a result, plaintiff claims that he feared for his life. On the fifth day of his incarceration, he was released.

On August 5, 1993 the plaintiff, through his attorney Lorraine DiCintio, Esquire, filed the original action alleging that the defendants violated his constitutional rights pursuant to 42 U.S.C. § 1983. He asserts that the defendants failed to take adequate and timely steps to ascertain his true identity and as a result he was wrongfully arrested and incarcerated. Additionally, the plaintiff alleges that he was denied adequate medical treatment while in jail.

The following defendants were named in the original complaint:[2] (1) City of Camden; (2) County of Camden; (3) William Simon, Sheriff of Camden County; (4) Port Authority Transit Corporation (PATCO); (5) City of Camden Police Department; (6) John Doe 1, Jail Administrator of Camden County; (7) John Doe 2, Warden of Camden County; (8) John Does 3 and 4, PATCO Police Officers; (9) John Does 5–10, Camden County Jail Corrections Officers; (10) John Does 11–15, Camden City Police Officers; and (11) John Does 16–25 Camden County Freeholders.

On December 23, 1994, the plaintiff filed a motion to amend the complaint. On January 20, 1995, I denied the plaintiff's motion as untimely since the trial was set to commence on February 14, 1995 before Judge Brotman, United States District Judge. However, Judge Brotman adjourned the trial date. In fairness to the plaintiff, I permitted him to re-file his motion so that the court could examine the merits of the motion rather than denying the application on procedural grounds.

Accordingly, the plaintiff filed the instant motion on April 11, 1995. The plaintiff alleges that two key depositions were taken in

---

1. Additionally, the plaintiff alleges that during the first day of his incarceration, his identification card was stolen and therefore he was unable to use the prison dining facilities. He claims that he missed two dinners on Monday and Tuesday because of the lost card.

2. On December 22, 1993, plaintiff's allegations against defendants Camden County Freeholders and the Jail Administrator of Camden County were voluntarily dismissed with prejudice. On April 6, 1994, the plaintiff's allegations against

PATCO and John Does 3 and 4– Port Authority Police Officers, were voluntarily dismissed with prejudice. Therefore, the defendants that remain in this lawsuit prior to the filing of this motion are the: City of Camden, County of Camden, William Simon, City of Camden Police Department, John Doe 2, Warden of Camden County, John Does 5–10, Camden County Jail Corrections Officers, and John Does 11–15, Camden City Police Officers.

March 1994. He contends that relevant information was discovered from these depositions that implicated new defendants and raised different causes of action.

Plaintiff now seeks to amend the complaint to add the following new defendants whose wrongdoing allegedly were not discovered until the commencement of the depositions in March 1994: (1) Daniel John McHugh, Sheriff's Officer, Camden County Sheriff's Department; (2) Fulton Sampona, Sheriff's Officer, Camden County Sheriff's Department; and (3) Edward V. Michalak, Jr., Undersheriff, Camden County Sheriff's Department.

In his original Complaint the plaintiff named six John Doe defendants, John Does 5–10, Camden County Jail Corrections Officers, and described them as employees of the County of Camden and the Camden County Jail "who were responsible for the safekeeping and supervision of the prisoners and detainees, including the plaintiff." (Compl. at ¶ 12). The plaintiff also named as a defendant, John Doe 2, Warden Camden County. The plaintiff now seeks to amend the complaint to name with specificity these defendants. They are: (1) William C. Strang, Warden, Camden County Correctional Facility; (2) Captain Joseph Petruzzi, Supervisor of Admissions, Camden County Correctional Facility; (3) Durwin Pearson, Corrections Officer, Camden County Correctional Facility; (4) Brian Belcher, Corrections Officer, Camden County Facility; (5) Craig Vines, Corrections Officer, Camden County Correctional Facility; (6) John R. Zindel, Sergeant in Admissions, Camden County Correctional Facility.

With respect to the "John Does" mentioned above, the plaintiff specifically seeks to name Pearson and Belcher as the officers who allegedly performed a strip search of the plaintiff. (Pl.'s Ex. J, ¶ 28, ¶ 29). Plaintiff also seeks to add Zindel, Petruzzi and Vines as defendants for their alleged respective roles in the misidentification and strip search. Zindel, as Sergeant in the admissions section of the Facility was responsible for training and supervising the corrections officers assigned to Admissions. Petruzzi, as Supervisor of Admissions was allegedly responsible for ensuring that proper procedures were followed for claims of misidentification. Vines as officer on duty in the Admissions booth was allegedly told of the misidentification claim but took no action.

Plaintiff also seeks to specifically name "John Doe" defendants who were described in the original complaint as John Does 11–15, Camden City Police Officers. He seeks to name these defendants as Coley Barbee and Walter Arthur.[3] Both Arthur and Barbee are Detectives of the Camden Police Department. Defendant Arthur was responsible for the original arrest of George Lopez, the plaintiff's brother. Defendant Barbee was the detective assigned to the investigation. Plaintiff alleges that Barbee and Arthur immediately learned through a computer check that Lopez was using an alias and failed to process Lopez on a juvenile complaint and correct his date of birth on the new arrest records. Plaintiff alleges this led to an indictment and bench warrant in the name of Juan A. Cruz.

Plaintiff also seeks to amend the complaint to add alternative theories of liability. He claims false imprisonment against: (1) McHugh; (2) Sampona; (3) Pearson; (4) Belcher; (5) Vines; (6) Zindel; (7) Simon; (8) Strang; (9) and Petruzzi. He asserts a claim of negligence against: (1) McHugh; (2) Sampona; (3) Barbee; (4) Arthur; (5) Michalak; (6) Strang; (7) Simon; (8) Vines; (9) Zindel; (10) Petruzzi; (11) Pearson; and (12) Belcher. He also asserts a claim of assault and battery against: (1) Pearson and (2) Belcher. Lastly, plaintiff asserts a claim of intentional infliction of emotional distress against: (1) Pearson and (2) Belcher.

---

3. By supplemental submission, the plaintiff now asks the court to consider the proposed defendants, Barbee and Arthur as entirely newly named defendants, rather than as "John Does." He claims this is permissible under the discovery rule because the plaintiff never realized the identity of these defendants until March 1994, the date of a key deposition. Consequently, since Arthur and Barbee are allegedly entirely new defendants, plaintiff asserts that there exists no statute of limitations problem and thus the motion to amend should be considered pursuant to Rule 15(a) rather than pursuant to the "John Doe" practice and the relation back requirements of Rule 15(c).

In opposition, the defendants argue that the plaintiff's motion should be denied. They assert that the amendment is untimely, prejudicial and fails to give sufficient notice of the action. Further, the defendants contend that all causes of action the plaintiff seeks to amend are barred by the statute of limitations, and fail to comply with Fed.R.Civ.P. 15(c).

My discussion will analyze every defendant and each separate cause of action the plaintiff seeks to add. First my analysis will set forth the relevant law relating to amending the complaint.

### DISCUSSION

*Application Under Fed.R.Civ.P. 15(c)*

The Federal Rules of Civil Procedure encourage and provide for a liberal policy for amending pleadings. Under Fed.R.Civ.P. 15(a), leave to amend pleadings shall be freely given when justice so requires. In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court articulated the liberal policy of allowing amendments underlying Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or undeclared reasons—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' *Id.* at 182, 83 S.Ct. at 230.

Under the *Foman* standard, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* The Third Circuit has elaborated on the proper analysis to apply:

> The trial court's discretion under Rule 15, however, must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is 'the touchstone

for the denial of leave to amend.' ... In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.

*Heyl & Patterson International, Inc. v. F.D. Rich Housing of the Virgin Islands,* 663 F.2d 419, 425 (3d Cir.1981), citing *Cornell & Co., Inc. v. Occupational Safety and Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir. 1978). However, in the present case more than Rule 15(a) is implicated. To evaluate whether or not the proposed amendment should be permitted, I must also look to Rule 15(c) which governs the relation back of proposed amendments.

To determine which rule is applicable, the analysis must draw a distinction between the two types of proposed defendants sought to be added in the amended complaint: (a) those who were named as "John Doe" in the original complaint, and (b) those who were not named at all in the original complaint and are now sought to be added as entirely new defendants. For the "John Doe" defendants, the plaintiff contends that the amendment should be granted despite the running of the statute of limitations. He asserts that the relation back provision of Fed.R.Civ.P. 15(c) permits the claim to relate back to the date of the filing of the original complaint.

As to the entirely new defendants not named in the original complaint as John Does, the plaintiff claims that his causes of action were timely filed and within the statute of limitations period. Thus, he contends that there is no statute of limitations problem and the court should permit the amendment solely pursuant to Fed.R.Civ.P. 15(a). I will first address the plaintiff's Rule 15(c) argument in relation to the "John Doe" defendants.

### I. JOHN DOE DEFENDANTS

**Proposed "John Doe" Defendants: Strang, Pearson, Belcher, Petruzzi, Vines and Zindel**

■ Fed.R.Civ.P. 15(c) governs the relation back of amended complaints. The plain-

tiff's motion seeks to amend the complaint by replacing a "John Doe" caption with the newly named defendants' real names. Replacing a "John Doe" caption with the newly named defendants' correct names amounts to "changing a party" within the meaning of Rule 15(c). *See Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174 (3d Cir.1977). Therefore, in deciding whether an amendment will relate back, the court must look to Rule 15(c) and determine whether all of the requirements of the Rule are satisfied. These requirements are:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action;
>
> (2) the basic claim must have arisen out of the conduct, transaction, or occurrence set forth in the original pleading;
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining its defense and (B) the party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.[4]

Plaintiff's motion as to the "John Doe" defendants presents three issues. First, whether the John Doe descriptions in the original complaint were sufficient to place the proposed defendants on notice to allow the relation back of the amendment as provided under Fed.R.Civ.P. 15(c)(1). Second, whether the proposed defendants received actual notice of the action within a 120 day period such that they will not be prejudiced in maintaining a defense as provided under Fed. R.Civ.P. 15(c)(3)(A). Third, whether the plaintiff has satisfied the notice requirements of Fed.R.Civ.P. 15(c)(3)(B), which requires him to show that the defendants "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."[5]

### 1. *Timeliness of the Complaint*

The parties agree that the two year New Jersey limitation governs the § 1983 actions since the statute of limitations is determined by borrowing the state's general or residual statute for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Callwood v. Questel*, 883 F.2d 272 (3d Cir.1989). Therefore, to satisfy the statute of limitations a complaint must be filed within two years of the cause of action. Under New Jersey law, the cause of action is deemed to accrue for statute of limitations purposes when the potential plaintiff knows of his or her injuries and of facts sufficient to attribute those injuries to the fault of another. *Viviano v. CBS, Inc.*, 101 N.J. 538, 546, 503 A.2d 296 (1986). *See also PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808, 817 n. 4 (D.N.J.1993). Federal law is in accord. *See Keystone Ins. Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988). Here, plaintiff was aware of the cause of action on March 8, 1992. On this date he was aware of the alleged wrongful incarceration and was able to attribute the alleged injury to the fault of the proposed defendants.

Although the original complaint was filed within this permissible time frame on August 5, 1993, the plaintiff is now attempting to add a new cause of action against certain "John Doe" defendants. The last day to have amended the complaint within the statute of limitations period would have been March 8, 1994. Leave to amend at this late stage in the litigation is clearly untimely and beyond the statute of limitations. Accordingly, the only way that the proposed amended complaint will be permitted against the "John Doe" defendants is if it relates back to the

---

4. Under the 1991 amended Rule 15(c)(3) guidelines, the second and third requirements must have been fulfilled within the 120–day period following the filing of the original complaint. *See Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

5. It is undisputed that the proposed amendments arise out of the same transaction or occurrence and therefore the requirement of Fed.R.Civ.P. 15(c)(2) is satisfied.

date of the filing of the original complaint, pursuant to Fed.R.Civ.P. 15(c).

2. *Analysis Under Fed.R.Civ.P. 15(c)*

a) *15(c)(1): Is Relation Back Permitted Under New Jersey Law?*

Rule 15(c)(1) mandates analysis of New Jersey state law to determine if it would permit the relation back of the proposed amendment. N.J. R. 4:9–3 [6] is the corresponding state law which governs relation back of amendments. Under N.J. R. 4:9–3 an amendment relates back whenever the claim asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading. The parties do not dispute that the claims against the newly specified "John Doe" defendants arose out of the conduct of the original complaint which occurred on March 8, 1992; ie., the alleged wrongful arrest and incarceration of the plaintiff. Additionally, the 4:9–3 requirements for notice and mistaken identity are virtually identical to the Federal Rule 15(c) requirements and will be subject to the same analysis.

■ N.J. R. 4:26–4 is more specifically applicable to the present case because it defines the "fictitious name" or "John Doe" practice for relation back of amendments.[7] Although Rule 4:9–3 and Rule 4:26–4 both permit an amended pleading to relate back to an earlier one, one difference between the two Rules is that the fictitious-party practice authorized by Rule 4:26–4 expressly contemplates the filing of an amended complaint. *Viviano v. CBS, Inc.*, 101 N.J. 538, 503 A.2d 296 (1986). The express purpose of the rule is to allow a plaintiff faced with a time limitation to institute an action and thereafter, upon learning the true name of the "John Doe" defendant, amend the complaint to specifically name the defendant. *Mileta v. Doe*, 158 N.J.Super. 550, 386 A.2d 897 (Law Div. 1978). The rule allows the plaintiff to amend his complaint after the limitations period has run, even if the defendant did not have notice of the action within the statutory time limit. *See Viviano v. CBS, Inc.*, 101 N.J. 538, 548, 503 A.2d 296 (1986).

■ The seminal case on the application of Rule 4:26–4 is *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394 (1973). The New Jersey Supreme Court in *Farrell* stated that a plaintiff will be permitted to amend his complaint after the statute of limitations has expired where such an amendment is justified upon a "proper balance of considerations of individual justice and repose...." *Id.* at 122, 299 A.2d 394. In making this determination, relevant factors include the diligence with which plaintiff sought to identify the defendant, the speed with which the complaint was amended and the defendant served, the impact that passage of time has had on the ability to gather evidence, and any prejudice to the defendant. *Id.* In the absence of prejudice, justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim. *Jordan v. Tapper*, 143 F.R.D. 575 (D.N.J.1992).

At the time of the filing of the original complaint, Mr. Cruz allegedly did not know the names of the numerous officers whom he came into contact with at the Facility. He therefore used John Doe designations to identify the defendants. He allegedly only learned of their identities after a two year period of conducting discovery. The time span in which the complaint was amended in this case is comparable to the lapse of time in

---

**6.** 4:9–3 states in part:

An amendment changing the party against whom a claim is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.

**7.** 4:26–4 states:

In any action ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding *an appropriate description sufficient for identification*. Plaintiff shall on motion, prior to judgement, amend the complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained. (emphasis added).

the *Farrell* case. Despite the three year span between the filing of the cause of action and the identification of the actual names of the parties in *Farrell*, the amendment was permitted. The court permitted the amendment because the plaintiff made a good faith effort to discover the unknown names and because there was no indication that the lapse of time resulted in loss of evidence or impairment of ability to defend. However, in this case there has been no such showing. There is a serious question as to whether or not the plaintiff exercised due diligence and made a good faith effort to discover the defendants' identities.[8]

More importantly, however, the defendants' cases may be prejudiced because they did not receive proper notice of the lawsuit. To avoid prejudice, Rule 4:26–4 requires that the plaintiff provide an appropriate description sufficient to identify those defendants that the plaintiff seeks to add. N.J. Rule 4:26–4. Defendants argue that with the exception of Warden Strang, the plaintiff's complaint fails to sufficiently identify any of the proposed defendants so as to put them on notice that they were proper parties to this action. Therefore the defendants assert that the proposed amended complaint should be denied as to all other defendants.

Analogous case law reveals that a concise designation of a "John Doe" defendant is needed to fulfill the appropriate description required. For example, in *Rutkowski v. Liberty Mutual Insurance Company*, 209 N.J.Super. 140, 506 A.2d 1302 (App.Div. 1986), the court denied the sufficiency of a fictitious description naming defendants, "who had designed, manufactured, sold ... or were otherwise responsible for the allegedly defective machine." *Rutkowski*, 209 N.J.Super. at 143, 506 A.2d 1302. The court concluded that it could not imagine how this "quoted phrase would have indicated to even the most thorough reader that plaintiff in-

tended to make a claim for negligent safety inspections." *Id.* The court was unmoved even by the fact that the proposed defendant were aware of the lawsuit before the statutory period had expired.

In *Wilson v. City of Atlantic City*, 142 F.R.D. 603 (D.N.J.1992), the District Court of New Jersey permitted the plaintiff's amended complaint under New Jersey law, which sought to substitute a named police officer for the "John Doe" party. However, the "John Doe" pleadings in that case were substantially more specific than those in the present case, except for the "John Doe" designations as to Warden Strang, Pearson, and Belcher. The amendment in *Wilson* was permitted because the complaint specifically alleged that the defendants "acting under color of State law, grabbed, struck, assaulted and battered the plaintiff." *Wilson*, 142 F.R.D. at 604. Additional specificity was added less than one month later in a notice of claim which described the police officer as "a black male, 6 ft. tall, with a gerry curl, and thin. . . ." *Id.*

Unlike the original complaint in *Wilson*, the complaint in the present case *only* supplemented the generic title of "John Doe" with an adequate description of the specific actor and his respective actions for proposed defendants Strang, Pearson and Belcher. Pearson and Belcher were described by their position and by their acts. The original complaint named them as "correction officers [who] performed a cavity search upon the plaintiff." (Compl. at ¶ 28). Additionally, Warden Strang was identified as "John Doe 2, Warden of Camden County." On the other hand, Petruzzi, Zindel, Vines, Arthur and Barbee were merely described generally as "officers". This clearly does not meet the specificity requirement.

Further, in *Viviano v. CBS, Inc*, 101 N.J. 538, 503 A.2d 296 (1986), the New Jersey Supreme Court permitted plaintiff's fictitious

---

8. This case was filed August 5, 1993 by counsel on behalf of the plaintiff. The plaintiff contends that he has made a good faith effort to obtain relevant discovery so that he could substitute real defendants for the "John Doe" designations. However, the record belies this assertion. From August 5, 1993, until April 11, 1995, the date of the filing of this motion, the record is devoid of any motions to compel discovery by the plaintiffs. If the defendants were engaging in "stonewalling tactics" as suggested by the plaintiff, the plaintiff never sought the court's intervention in an attempt to resolve these disputes.

designation of "John Doe Company manufacturer of record press machine", but cautioned plaintiffs in the future to more accurately designate fictitious parties. This warning concerning well-tailored fictitious designations should apply to the case at hand.

Accordingly, to comply with the sufficiency requirement of the "fictitious name" practice, Mr. Cruz was required at a minimum to state in his original complaint the specific positions of the respective Officers (ie. Admissions Booth Officer) and their specific acts. The court finds that the "John Doe" descriptions were sufficient for Warden Strang, Belcher and Pearson but were inadequate as to officers Petruzzi, Vines, Zindel, Barbee and Arthur. Below, is a discussion of the sufficiency of the notice as to each defendant sought to be named in the proposed amended complaint.

*Warden William Strang*

Proposed named Defendant William Strang was identified in the original complaint as "John Doe 2, Warden of Camden County Jail." As Warden of the Facility, Strang is responsible for the policies of the Facility and the training and actions of its employees. (Pl.'s Br.Ex. K). The defendants concede that the description of "Warden" was sufficient to identify Strang because he was the only warden of the facility and thus there would be no confusion as to who was being named as a defendant. Therefore, the amendment as to William Strang shall be granted.

*Defendants Pearson, Belcher, Zindel, Vines, Petruzzi, Arthur and Barbee*

In the original complaint the "John Doe" Correction Officers, Pearson, Belcher, Zindel, Vines, and Petruzzi were plead as John Does 5–10, Camden County Jail Corrections Officers and described as "employees of the Camden County Jail responsible for the safekeeping and supervision of the prisoners and detainees including the plaintiff." (Pl.'s Br. Ex. "H" at ¶ 12). The proposed defendants Arthur and Barbee were plead as John Does 11–15, Camden City Police Officers and described as "individuals who, at all times relevant to this action were employed by defendant City of Camden as police officers." (Pl.'s Br.Ex. "H" at ¶ 13). Neither of these

descriptions alone meet the sufficient description required by 4:26–4.

However, for Officers Pearson and Belcher as shall be noted below, an additional description of the specific act of a body cavity search was alleged in the original complaint. This identifiable description as to Pearson and Belcher, which was missing as to defendants Petruzzi, Vines, Zindel, Arthur and Barbee, fulfills the requirements for the sufficient description mandated by 4:26–4.

### i. Pearson and Belcher

In his amended complaint, plaintiff seeks to add Pearson and Belcher as the officers who performed a cavity search upon the plaintiff. In the original complaint, the plaintiff alleged that the strip search was attributed to the actions of three John Doe defendants who were described as "three corrections officers [who] performed a cavity search upon the plaintiff." (Compl. at ¶ 28). This language clearly notified the officers that a specific prisoner, Juan A. Cruz, was alleging that an illegal strip search was performed on him on March 8, 1992.

Even if Belcher and Pearson did not remember the incident, they simply had to look at the facilities' records or log books to see who performed the search on the date in question. The description was specific enough to advise Pearson and Belcher, the individuals who actually performed the alleged search on March 8, 1992, that they were named in a lawsuit. Accordingly, the court finds that the officers should have been aware that a suit was being initiated against them. Therefore, the motion to amend as to Pearson and Belcher shall be granted.

### ii. Zindel, Petruzzi and Vines

Additionally, plaintiff now seeks to add Sergeant of Admissions Zindel, Supervisor of Admissions Petruzzi and Admissions Officer Vines for their respective roles in the misidentification and strip search. Plaintiff claims that the generic description of "individuals responsible for the safekeeping and supervision of the prison" should have notified these defendants that a lawsuit would be initiated against them. As to these defen-

dants, the plaintiff is not even claiming that they actually performed the alleged strip search. Rather, the plaintiff seeks to add supervising officers and a officer who was in charge of manning the admissions booth.

In actuality the plaintiff seeks to have the generic description of "individuals responsible for the safekeeping and supervision of the prison", to serve as a blanket identification of any officer who worked in the prison on the day in question. This simply will not do. Such a sweeping description lacks the appropriate specificity required to give reasonable notice. A specific job description designation was particularly available as to defendants Petruzzi and Zindel who were Supervisor of Admissions and Sergeant in Admissions, respectively. Sufficient notice of suit would have been met if the original complaint included the appropriate job title description of Sergeant or Supervisor, and was supplemented by an adequate description of the specific act being alleged.

### iii. Arthur and Barbee

The insufficiency of the description of Arthur and Barbee is based on the same reasoning. The plaintiff identified them as "individuals employed by the Camden County Police Department." Since over four hundred individuals are employed by the Camden County Police Department, this broad phrase encompasses too many possible actors and therefore also lacks the required specificity. Considering the multitude of prisoners and detainees received and processed by the many police officers involved in an arrest, it would be hard to conceive that the language of the complaint adequately notified Arthur and Barbee that a lawsuit would be initiated against them. Unlike a designation such as "Warden" which connotes only one

person, the phrase "Police Officer" encompasses many more possible actors.

In conclusion, given the Rule 4:26–4 requirement placed on the plaintiff to provide a description sufficient to identify a defendant, I will only permit the amendment as to Warden Strang, Pearson and Belcher. The proposed amendment naming Petruzzi, Vines, Zindel, Arthur and Barbee shall be denied. Fed.R.Civ.P. 15(c)(1) therefore does not provide a basis for the plaintiff to now amend his complaint to add these defendants. Since Rule 15(c)(1) is not satisfied as to Petruzzi, Vines, Zindel, Arthur and Barbee, the court must analyze whether the plaintiff's complaint fulfilled the provisions of Fed.R.Civ.P. 15(c)(3) as to these defendants.

### b) Notice Requirements of Rule 15(c)(3)

Under 15(c)(3) the plaintiff must demonstrate that the new parties received notice of the institution of the action against them, and that each party knew or should have known that but for a mistake concerning identity the suit would have been brought against them.[9] Both these requirements must be fulfilled within 120 days after the filing of the complaint. Here the original complaint was filed on August 5, 1993. Given the 120 benefit, the proposed defendants had to have received actual notice of the claims asserted against them by December 3, 1993.

■ It is clear that the defendants first received notice of the proposed claims upon the filing of the original motion to amend which was filed on December 23, 1994.[10] This is more than a year after the 120 day period and more than two years since the alleged incident occurred. The plaintiff argues however that the defendants received constructive notice through their attorney

---

**9.** The Federal Rules of Civil Procedure do not explicitly afford parties the right to use a fictitious name. Accord N.J. R. 4:26–4. Rather, the mistake condition in the Fed.R.Civ.P. 15(c) has a similar application to the "John Doe" practice. This mistake prong or "mistake condition" allows an amendment adding the proper identities of new defendants, previously identified as "John Doe" defendants in the original complaint. *Heinly v. Queen,* 146 F.R.D. 102, 107 (E.D.Pa. 1993). *See also Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171, 175 (3d Cir.1977) (rule was satis-

fied in an amendment adding the proper identity of a new defendant, designated as an "Unknown Employee" in the original complaint). The mistake aspect of the rule is designed to insure that the new defendant knew or should have known within the relevant time period that his joinder was a distinct possibility. *Heinly v. Queen,* 146 F.R.D. 102 (E.D.Pa.1993) (citing *Advanced Power Systems, Inc. v. Hi–Tech Systems, Inc.,* 801 F.Supp. 1450, 1457 (E.D.Pa.1992).

**10.** *See* pp. 1103–1104 *supra.*

who represents them and the original Camden County Defendants. The plaintiff asserts that since the original Camden County defendants filed their answer to the complaint on November 23, 1993, this indicates that defendants' counsel had notice of the institution of this action before the expiration of the relevant time period.

The plaintiff's claim fails in relation to all of the "John Doe" defendants except Warden Strang, Belcher and Pearson. Cases allowing constructive notice through shared counsel require that the attorney "knew or should have known" that the designations in the original complaint referred to specific members involved in the alleged transaction.[11] In the present case, the lack of specificity in the description in the original complaint, of defendants Petruzzi, Vines, Zindel, Arthur and Barbee, renders the notice and "mistake condition" of Rule 15(c)(3) unsatisfied. Counsel could not have imputed constructive knowledge of the suit as to these parties because of the vagueness of the complaint. At the very most, the officers may have known about an initiation of litigation against the facilities for which they worked. However, this type of vague pleading would not reasonably place defendants' attorney on notice that the proposed defendants would be sued.

The recent Third Circuit case *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173 (3d Cir.1994), instructs us that more than mere notice of the existence of litigation is required. In *Lundy*, the plaintiff, a patron at the defendant's casino, TropWorld, suffered a heart attack and brought a negligence action against the casino owner. TropWorld filed a third party complaint against the proposed defendant, Dr. Carlino,

after the two-year statute of limitations for the original claim had expired. Eight months later, the plaintiffs filed a motion under Rule 15(c) to amend their original complaint to add third party defendant, Dr. Carlino, as a direct defendant. Although the court acknowledged that the defendant received notice of the existence of the litigation within 120 days, it held that the cross-claim did not sufficiently notify the defendants that the plaintiffs intended to sue him directly. *Id.* at 1182. Additionally, the court stated that the third party complaint gave the defendant no affirmative reason to believe that the plaintiff would sue him but for a mistake of identity. *Id.* at 1183. The decision in *Lundy* underscores the critical importance of the actual notice required and fulfillment of the "mistake condition."

In *Lundy*, relation back was not permitted even though the proposed defendant was aware of a probable lawsuit and was actually involved in the suit as a third party defendant. Although *Lundy* did not involve a "John Doe" practice the logic of the case can be applied to the present case. *Assuming arguendo* that knowledge of an institution of an action against the Camden Corrections Facility or Camden Police Department was imputed to proposed defendants by counsel, there still was not sufficient specificity in the complaint to notify the attorney that an action would be brought against each individual Officer directly.[12] Due to the lack of specificity in the complaint, neither the attorney nor the officers could have known that but for a mistake of identity they would have been named rather than any of the many other officers at their place of employment. Rela-

---

11. The Third Circuit has held that knowledge may be imputed to a government official when the original official to be added as a defendant is represented by the same government counsel as the original defendants, and counsel knew or should have known within the relevant time period that joinder of the additional official was a distinct possibility. *See Heinly v. Queen*, 146 F.R.D. 102, 106–107 (E.D.Pa.1993); *Taliferro v. Costello*, 467 F.Supp. 33, 35–36 (E.D.Pa.1979); *Mitchell v. Hendricks*, 68 F.R.D. 564, 567–8 (E.D.Pa.1975). Unlike the present case however, the specificity of the original complaint in the cases above placed counsel on notice that a lawsuit was probable against the later-named defendants. Unlike the case at bar, the original com-

plaints in these cases sufficiently identified the specific actions and actors allegedly responsible.

12. A question remains whether or not a police department is a public entity to which a claim for common law negligence and § 1983 may be asserted. *See PBA v. Woodbridge Police Dep't*, 832 F.Supp. 808, 809 (D.N.J.1993); 3 Eugene McQuillan, *The Law of Municipal Corporations* @ 12.40 (1990); *Hilliard v. New Jersey Army Nat'l Guard*, 527 F.Supp. 405, 408 (D.N.J.1981). *City of Newark v. Hartford Accident & Indemnity Co.*, 134 N.J.Super. 537, 342 A.2d 513 (App.Div. 1975).

tion back must therefore be rejected since I can find no reason how the proposed parties could have been placed on notice that a claim was being asserted against them in particular. Without this notice, the proposed defendants were unable to proceed with any fact-finding procedures to aid in their defense for a period of over three years. Accordingly, relation back of the amended complaint will undoubtedly prejudice the defendants' case on the merits and lead to a miscarriage of justice.

Therefore Warden Strang, Belcher and Pearson are the only defendants sought to be substituted who received adequate notice. The designations of "Warden" and "Correction Officers who performed a cavity search" respectively, should have notified the defendants and their counsel that but for the plaintiffs inability to ascertain their actual identities, a suit would have been brought against them. Accordingly, relation back shall be permitted only in regard to the claims against Warden Strang, Belcher and Pearson.

## II. NEW DEFENDANTS

### Proposed New Defendants: McHugh, Sampona, and Michalak

The plaintiff also seeks to amend his complaint by adding as new defendants McHugh, Sampona and Michalak [13] of the Camden County Sheriff's Department and relating the amendment back to the date of the original pleading. All three proposed defendants are added to the § 1983 claim and the proposed negligence claim. Defendants McHugh and Sampona are also charged under the proposed false imprisonment claim.

The amended complaint alleges that Sheriff's Officers McHugh and Sampona were responsible for the service of the incorrect bench warrant. It is maintained that they were informed two weeks prior to Mr. Cruz' arrest that the warrant was inaccurate yet took no corrective measures. Additionally, the plaintiff asserts that once officers McHugh and Sampona learned of his arrest, they failed to take effective action to secure his release during the ensuing four days. As to proposed defendant Michalak, the plaintiff alleges that as a superior of officers McHugh and Sampona he failed to adequately train and supervise them. The plaintiff asserts that this ultimately resulted in his alleged wrongful arrest and incarceration.

The parties agree that the statute of limitations in plaintiff's case is two years pursuant to New Jersey's two year tort statute of limitations, N.J.S.A. 2A:14–2, which is applicable for § 1983 civil rights claims. *Cito v. Bridgewater Tp. Police Dept.*, 892 F.2d 23 (3d Cir.1989). There is a dispute however, as to when the statute of limitation began to run. The defendants claim that the statute of limitation began to run on March 8, 1992, the date when the alleged false incarceration occurred and the plaintiff realized his injury. Conversely, Mr. Cruz argues that the statute of limitations period began to run on March 9, 1994, the date of the commencement of the depositions of Officers McHugh and Sampona. Specifically, Mr. Cruz claims that the statute of limitation did not begin to run until he realized that his injury was attributable to the fault of another. He asserts that he did not know of the alleged wrongdoers, Officers McHugh and Sampona, until they were deposed in March 1994. Accordingly, he maintains that he did not discover that he had a cause of action against these individuals until the depositions revealed that McHugh and Sampona failed to take action to rectify the incorrect warrant.[14] The plaintiff therefore alleges that there is no limitation problem as to the entirely new defendants, McHugh,

---

13. Previously named as "John Does", the plaintiff now seeks to add Officers Arthur and Barbee as new defendants. *See infra.* n. 17.

14. While the plaintiff argues that the necessary information was first discovered at a deposition on March 9, 1994, he fails to provide any explanation as to why he waited approximately eight months after March 9, to first file a motion to amend the complaint. It must also be noted that during the two years since the filing of the original complaint, the plaintiff never filed a motion to compel the discovery he so vigorously alleges was withheld. Further, this court has taken several measures to ensure that the plaintiff would be able to conduct all necessary discovery procedures. Within a two year period, I have entered two different scheduling orders and have extended the time for discovery from June 30, 1994, to August 31, 1994.

Sampona and Michalak, and that the court should consider the proposed amendment pursuant to Fed.R.Civ.P. 15(a), rather than the relation back requirements of Rule 15(c). I will consider this argument below.

*Applicability of the Discovery Rule as to Entirely New Defendants McHugh, Sampona, and Michalak*

■ In support of his motion to amend the complaint as to the newly named defendants, the plaintiff seeks to invoke the "discovery rule." *See Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973). This rule, which was first announced by the New Jersey Supreme Court in *Fernandi v. Strully,* 35 N.J. 434, 173 A.2d 277 (1961), provides that a cause of action will not accrue until the injured party discovers or by an exercise of reasonable diligence and intelligence should have discovered that a basis for an actionable claim exists.[15] More recently, the court in *Savage v. Old Bridge–Sayreville Medical Group,* 134 N.J. 241, 633 A.2d 514 (1993) gave a concise review of the discovery rule and its pertinent components. The court noted that:

> Our cases have regularly emphasized the same two threads of knowledge of injury and knowledge of fault. The seminal case of *Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973), defined the issue in terms of when the plaintiff " 'knew or should reasonably have known the nature of Maria's illness and its causal relationship with the alleged negligence.' " *Id.* at 272, 300 A.2d 563, (quoting *Lopez v. Swyer,* 115 N.J.Super. 237, 252, 279 A.2d 116 (App.Div.1971).

*Tevis v. Tevis,* 79 N.J. 422, 432, 400 A.2d 1189 (1979), states that "when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or facts suggesting the fault of another person." *Savage,* at 246–247, 633 A.2d 514.

The discovery rule is inapplicable since the plaintiff knew at the time of the arrest that there was a problem with the warrant. Indeed, this is the basis of his cause of action. Moreover, he knew or believed that his "injury", i.e. his arrest and incarceration, was attributable to the fault of others. He simply did not know, at that time, the exact identities of all allegedly responsible parties.

This court finds no case which instructs it to extend the tolling of the statute of limitations simply because a plaintiff knew that his injury was caused by the fault of another, but did not know their exact identity. In fact, many of the discovery rule cases use the phrase "fault of another" and "identity of another" interchangeably. *See Savage v. Old Bridge–Sayreville Medical Group,* 134 N.J. 241, 633 A.2d 514 (1993); *Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973); *Lynch v. Rubacky,* 85 N.J. 65, 424 A.2d 1169 (1981). As stressed in *Lopez,* the focus of a discovery rule inquiry should center upon an injured party's knowledge concerning the origin and existence of his injuries as related to the conduct of others.[16] Knowledge of the exact

---

**15.** As in *Strully,* the discovery rule is most often applied in medical malpractice cases. *See, e.g., Fox v. Passaic General Hospital,* 71 N.J. 122, 363 A.2d 341 (1976): *Moran v. Napolitano,* 71 N.J. 133, 363 A.2d 346 (1976); *Alfone v. Sarno,* 139 N.J.Super. 518, 354 A.2d 654 (App.Div.1976). Although it has found some other applications in the tort field. *See, e.g., Diamond v. N.J. Bell Telephone Co.,* 51 N.J. 594, 242 A.2d 622 (1968) (improper installation of an underground conduit); *New Market Poultry Farms, Inc. v. Fellows,* 51 N.J. 419, 241 A.2d 633 (1968) (error in land survey). However, the plaintiff in its lengthy brief fails to cite any case which applies the discovery rule to a § 1983 claim.

In essence, the discovery rule applies and the statute of limitation begins to run when the plaintiff is aware of an injury and knew that the injury was caused by a third person. The rule is

designed to toll the statute of limitations in a situation where the plaintiff realizes an injury but does not know that the injury can be attributed to another. The rule does not require, as the plaintiff suggests, that the plaintiff realize the injurer's exact identity.

**16.** The Court in *Lopez* defined two classes of injured claimants whose ignorance or lack of knowledge concerning the nature and source of injury should not, without more, bar relief. In one, the person may be generally unaware of an injury until after the statutory period has expired. In other cases damages may be all too apparent, but the injured party may not know it is attributable to the **fault or neglect of another.** In this case, the claim of wrongful incarceration presupposes that the injury is attributable to the fault of others.

identity of who caused the injury is not required.

The plaintiff relies on medical malpractice cases which use the discovery rule to support his position that the statute of limitations first begins to run when a plaintiff knows the exact identity of the alleged wrongdoer. However, this reliance is misplaced. Unlike the present case where the focus is on when Mr. Cruz discovered who the alleged wrongdoers were, plaintiffs in medical malpractice cases are usually aware of who performed their surgery. As such, the focus in medical malpractice cases is on when the plaintiff discovers that his injury was due to an identifiable doctor's negligence, rather than if the injury was caused naturally or by the normal healing process.

The case at hand is also distinguishable from medical malpractice cases where a plaintiff first discovers the injury and/or fault of another many months after an initial operation.[17] In particular, plaintiff relies on *Fox v. Passaic General Hospital*, 135 N.J.Super. 108, 342 A.2d 859 (App.Div.1975), in his attempt to persuade the court to invoke the discovery rule in the present case. In *Fox*, a physician failed to remove a drain from the patient's abdomen during surgery. The court held that the discovery rule applied and the statute of limitations did not begin to run until the object was revealed by X-ray and surgically removed. *Id.* The court found that the patient did not know or have reason to know of the presence of the drain before it was revealed by X-ray. *Id.* Unlike *Fox*, which involved an object that was left inside a patient without his knowledge, Mr. Cruz knew exactly what happened during his 1992 incarceration. It is clear that his discovery

of injury and fault of another occurred simultaneously during the alleged false arrest.

The plaintiff's reliance on *Royal Indemnity Co. v. Petrozzino*, 598 F.2d 816, 820 (3d Cir.1979), is also misplaced. In *Royal Indemnity*, a robber plead guilty in 1966 to a bank robbery he committed in 1964. In 1970 the bank's insurer, Royal Indemnity Co., learned of the robbers identity and brought an action against the bank robber. The court held that the discovery principle applied and the statute of limitation did not begin to run until the insurer learned of the robber's identity.

Mr. Cruz tries to analogize his discovery of the officer's identities at depositions, to the bank insurer's eventual discovery of the bank robber's identity. However, the facts and holding of *Royal Indemnity* are clearly distinguishable from the facts in the instant case. First, unlike the insurer in *Royal*, the plaintiff herein was involved in the incident. The insurer in *Royal* was not at the scene of the robbery and would have no way of ascertaining or remotely describing the robbers identity. However, in this case, Mr. Cruz was present and fully coherent when all of the alleged wrongs were committed against him.

Additionally, the court in *Royal* stated that the discovery rule should apply since the insurer *did not* have the benefit of the use of the fictitious name practice of "John Doe". (emphasis added). "New Jersey Rule of Court 4:26–4 which sets forth the John Doe procedure, was promulgated in 1969. It is therefore apparent that appellant could not have taken advantage of it in 1964." *Id.* at 820. Unlike the plaintiff in *Royal*, Mr. Cruz had the ability to rely upon the John Doe practice. In fact, it is evident that he was

---

17. In many medical malpractice cases involving the discovery rule, knowledge of fault is acquired simultaneously with knowledge of injury. It was observed in *Diamond v. N.J. Bell Telephone Co.*, 51 N.J. 594, 601, 242 A.2d 622 (1968) that "[i]n the medical malpractice situation, the presence of a foreign object provides a ready basis for inference of proximate causation and negligence without further proof."

There are other cases however, where fault is not implicit in injury. *E.g., Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563 (1973); *Alfone v. Sarno*, 139 N.J.Super. 518, 354 A.2d 654 (App.Div.

1976). In *Lopez*, for example, the plaintiff suffered burns from radiation therapy administered by defendants. After a period of suffering, she sought assistance from another doctor. She later overheard a doctor who was examining her say to other doctors "And there you see, gentlemen, what happens when the radiologist puts a patient on the table and goes out and has a cup of coffee." 62 N.J. at 271, 300 A.2d 563. The court determined that the statute of limitation began to run from the time she overheard these statements and discovered that these burns were caused by another.

familiar with the fictitious name procedure since he alleged a number of John Does in the original complaint. Based on the distinctions between the above cases and the present one, I find no relevant precedent which instructs me to apply the discovery rule to the facts of this case.

### a) Timeliness of the Complaint

■ Since the discovery rule is not applicable, federal law and New Jersey law dictate that the statute of limitations begins to run at the time when the potential plaintiff is aware, or should be aware, of the existence of the injury. *See PBA Local No. 38 v. Woodbridge Police Depart.*, 832 F.Supp. 808, 817 (D.N.J.1993); *Viviano v. CBS Inc.*, 101 N.J. 538, 503 A.2d 296 (1986). As a reasonable person exercising due diligence, Mr. Cruz should have discovered that his rights were violated at the time of the arrest on March 8, 1992. The notice of motion to amend was filed on April 11, 1995. Therefore the proposed amendment as to McHugh, Sampona, and Michalak[18] is not within the two years statute of limitations period for purposes of both the § 1983 claim and the additional claims of false imprisonment and negligence. The claims therefore will only be permitted if they "relate back" to the date of the filing of the original complaint.

### b) Relation Back under Rule 15(c)

■ As stated earlier, Fed.R.Civ.P. 15(a) requires that amendments to pleadings shall be freely given where justice so requires. However, since the statute of limitations has expired, the essence of Rule 15(a) is not reached. Instead the court must look to Fed.R.Civ.P. 15(c). The amended complaint may still relate back to the date of the filing of the original complaint if Fed.R.Civ.P. 15(c) is satisfied.

Rule 15(c)(1) requires us to determine if relation back is permitted by New Jersey law as to these entirely new defendants. As stated earlier in my analysis for the "John Doe" defendants, the applicable New Jersey Rule, 4:9–3[19] is analogous to Fed.R.Civ.P. 15(c). Since the requirements for the New Jersey rule are virtually identical to the requirements of Rule 15(c)(2) and 15(c)(3), they will be subject to the same analysis. An amendment must therefore satisfy 15(c)(2) and 15(c)(3) in order to relate back to the date of the original complaint under both federal and state law.

Pursuant to Fed.R.Civ.P. 15(c)(2), the claim asserted in the amended pleading must arise out of the same "conduct, transaction, or occurrence" set forth in the original pleading. For these proposed defendants, there is no question that the claims against the proposed new defendants arise out of the same

---

**18.** In a supplemental submission after oral arguments were conducted on June 30, 1995 the plaintiff argues that the court should also use the discovery rule, rather than the John Doe practice, to assess the motion to amend as to defendants Barbee and Arthur. In essence, the plaintiff is attempting to circumvent the John Doe practice upon which he so heavily relies.

As per the discussion *supra*, the discovery rule dictates that the statute of limitation begins to run when there is knowledge of injury and knowledge that the injury was caused by the fault of another. Implicit in the use of the John Doe practice is the knowledge that someone caused the plaintiff's injury, but that individual can not be properly identified. This is unlike the application of the discovery rule where a plaintiff alleges that he does not know that an injury occurred and whether or not the cause of injury was attributable to someone else. The "John Doe" practice and the discovery rule require two divergent applications.

On the one hand the plaintiff alleges that he knew who committed the wrongdoing but that he had to use the "John Doe" practice because the

specific identity of Arthur and Barbee were unknown. However, on the other hand the plaintiff now proffers to the court that Arthur and Barbee should be added as new defendants since the plaintiff did not know of their existence or realize their identity until the March 1994 depositions. Simply put, the plaintiff can not have it both ways. He used the John Doe practice in his original complaint to allege that he knew he was wronged by someone. However, he cannot now claim that he first learned that his injury was due to the fault of another when he discovered the exact identities of Barbee and Arthur at their depositions on May 20, 1994. The plaintiff's argument in favor of the applicability of the discovery rule contradicts the logic of his argument in support of the use of the "John Doe" practice. Therefore, I do not find the plaintiff's argument in support of the discovery rule as to Arthur and Barbee persuasive and this argument shall be denied.

**19.** *See* n. 6 *supra* and accompanying text.

**1116**

occurrence, i.e., the plaintiff's alleged wrongful incarceration.

Similar to whether or not an amendment to add the "John Doe" defendants is permissible, the court must engage in the equivalent analysis concerning whether the defendants had actual notice of the claims asserted against them. As set forth above, the Third Circuit case, *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1182 (3d Cir.1994) instructs that something more than mere notice of the existence of litigation is needed. In fact actual notice is required to add the newly named defendants. First, unlike Dr. Carlino in *Lundy*, defendants in this case *did not* even receive actual notice of the amended complaint within 120 days after filing of the original complaint. The original complaint was filed on August 5, 1993 and the proposed defendants first received notice of the motion to amend on April 11, 1995. This is more than sixteen months after the 120 period. December 3, 1993 would have been 120–days after filing of the original complaint.

Secondly, proposed defendants McHugh, Sampona, and Michalak were never even named in the original complaint and are entirely new to this action. I can find no justification to conclude that these defendants would have the slightest notice of a probable lawsuit pending against them. Unlike the "John Doe" defendants addressed earlier, the fictitious name procedure was not utilized even though the plaintiff was fully aware of this procedure.

Finally, the "mistake condition" as set forth in Rule 15(c)(3) [20] was not satisfied as to these defendants because there were no specific allegations made against them in the original complaint, nor is there any suggestion that but for a mistake the plaintiff sought to hold these individuals liable. The only "mistake" presented is the plaintiff's apparent failure to even name the defendants. This is not a case where the plaintiff simply misidentified or misspelled the defen-

dants name. Rather this is a situation where the plaintiff did not even mention these defendants. Accordingly, I find no reason why these defendants should have known that the plaintiff intended to sue them directly. Therefore, I must conclude that under Fed. R.Civ.P. 15(c), the proposed new defendants, McHugh, Sampona and Michalak did not have notice of the action and would be prejudiced in maintaining a defense on the merits.

### AMENDMENT FOR ALTERNATIVE THEORIES OF LIABILITY

Plaintiff's original complaint charged defendants with violation of 42 U.S.C. § 1983. After the trial date has come and gone, the plaintiff now seeks to amend his complaint to include entirely new causes of action based on common law theories of false imprisonment, assault and battery and negligence. Since relation back shall not be allowed for Petruzzi, Vines, Zindel, Arthur, Barbee, McHugh, Sampona and Michalak, the plaintiffs amended complaint in relation to these defendants is likewise time barred. Therefore, it is not necessary to determine whether the new alternative theories of liability will be permitted as to these defendants.

We will therefore only address the alternative theories of false imprisonment claims and negligence claims against defendants Pearson, Belcher, Warden Strang and Sheriff William Simon,[21] and the assault and battery claim against Pearson and Belcher. To the extent that the amended complaint seeks to hold the defendants liable for false imprisonment under § 1983, the county defendants do not object. However, with regard to the newly-asserted pendent claims, the defendants object.

The relation back of the alternative negligence claims against Strang, Simon, Pearson and Belcher and the assault battery claim against Belcher and Pearson is addressed by Fed.R.Civ.P. 15(c)(2). The Rule states that "(a)n amendment of a pleading relates back

---

**20.** *See* n. 9 *supra*.

**21.** The plaintiff named William Simon in the original complaint. He asserts that William Simon, as Sheriff of Camden County Sheriff's Department, is ultimately responsible for the training of his subordinate and supervisory officers.

Plaintiff contends that the Sheriff was responsible for the actions of his subordinates who were allegedly negligent in failing to have corrected a warrant which they knew misidentified the plaintiff.

to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ..." In recent years, federal courts have analyzed the specific conduct of the opponent upon which the party relies to enforce his claim or defense and if it relates to the same general wrong or conduct complained of in the original pleading. *Pendrell v. Chatham College,* 386 F.Supp. 341 (W.D.Pa.1974). In *Martell v. Trilogy, Ltd.,* 872 F.2d 322 (9th Cir.1989), the court stated that the original and proposed pleadings should be analyzed to determine whether they share common operative facts so as to insure that the defendants had fair notice of the transaction, occurrence or conduct that was called into question.

■ Thus, the major issue under Rule 15(c) is whether the original pleading gave the opposing party fair notice of the general fact situation involved in the amended pleading. If the amendment does not change the factual basis of the action but merely corrects or clarifies the allegations in the original complaint, the amendment will relate back to the original complaint. The fact that a particular allegation was not mentioned in the original pleading has been held to be unimportant where the original pleading gave the opposing party notice that a claim was being asserted against him in connection with a particular transaction. *Banks v. St. Mary's Hospital & Medical Ctr.,* 558 F.Supp. 1334 (D.C.Co.1983); *Goodman v. Poland,* 395 F.Supp. 660 (D.C.Md.1975).

The alternative theories which the plaintiff wishes to add are all based on the same fact situation as that in the original complaint i.e., the wrongful arrest and incarceration of the plaintiff. In the original complaint, plaintiff alleged violations of his rights based on the irresponsible behavior of the Warden and his Correction Officers, and by the Sheriff and his subordinates, resulting in the wrongful arrest and incarceration. There is a sufficient nexus between the facts in the original complaint and the amended complaint to give fair notice to Strang and Simon that a claim was being asserted against them based on

their conduct in relation to the wrongful arrest.

The amended complaint only served to clarify the allegations in the original complaint by asserting negligence in the training of their respective officers. As supervisors, Strang and Simon were aware that they were responsible for the actions and training of their officers and would thus have fair notice of the proposed claim of negligence. Similarly, the claims of intentional infliction of emotional distress, assault, battery and negligence against Pearson and Belcher arose out of the same conduct and transaction, namely the alleged illegal strip search. Therefore, Pearson and Belcher would also have fair notice of the proposed claims of negligence, intentional infliction of emotional distress, assault and battery, based on their knowledge of the events of March 8, 1992.

## CONCLUSION

Based upon the record before me, the amended complaint against original "John Doe" defendants Vines, Zindel, Petruzzi, Arthur, and Barbee does not relate back to the date of the original complaint and is time barred pursuant to Rule 15(c). Accordingly, the alternative theories of liability against these defendants are denied.

The amended complaint asserting claims against Warden Strang, Pearson and Belcher related back to the original complaint. The amended additional claims of false imprisonment and negligence against Strang and Sheriff Simon and the claims of intentional infliction of emotional distress, assault, battery and negligence against Pearson and Belcher also relate back since the new claims arose out of the same conduct and transaction in the original complaint.

Lastly, the discovery rule is inapplicable to the newly named defendants McHugh, Sampona and Michalak, and therefore the statute of limitation has run. The proposed new defendants did not receive adequate notice within 120 days after filing of the original complaint and thus the claims do not relate back pursuant to Fed.R.Civ.P. 15(c). Therefore, the plaintiff's request to amend the original complaint to name these new defen-

dants and to assert new causes of action against them shall be denied.